STATE OF NORTH CAROLINA v. JIMMIE SINCLAIR

No. COA08-103

(Filed 5 August 2008)

**1. Obstruction of Justice— resisting an officer—fleeing**

The trial court properly dismissed a charge of resisting a public officer where defendant was approached by an officer who knew him in a known drug area, defendant asked if the officer wanted to search him again, and then fled after the officer said yes. Flight from a consensual encounter cannot be used as evidence that defendant was resisting, delaying, or obstructing the officer.

**2. Drugs— constructive possession—crack cocaine found along route of fleeing defendant**

The trial court properly denied a motion to dismiss a charge of possessing cocaine with intent to sell or deliver where defendant ran from officers and the crack cocaine was found along the route followed by defendant shortly after he was apprehended. The circumstances create a reasonable inference that the drugs came from defendant.

**3. Criminal Law— instructions—flight**

There was no plain error in instructing the jury on defendant's flight in considering a cocaine possession charge where defendant fled after an officer indicated that he wanted to search defendant.

**4. Drugs— instructions—constructive possession**

The trial court did not err by instructing the jury on constructive possession of cocaine where the drugs were found along the path defendant had followed as he fled from officers.

**5. Sentencing— habitual felon—indictment not defective**

An habitual felon indictment was not fatally defective where it did not allege that defendant was at least eighteen years

STATE v. SINCLAIR

[191 N.C. App. 485 (2008)]

old at the time of at least two prior convictions (the indictment need not allege defendant's age or date of birth); the statement that the felonies were committed in violation of the General Statutes and that defendant was convicted in Superior Court in North Carolina sufficiently named the state against whom the felonies were committed; there was sufficient notice that defendant was being tried as a recidivist; and, the indictment is not fatally defective for its failure to indicate that a detective testified before the Grand Jury.

Appeal by Defendant from judgments entered 19 September 2007 by Judge Jack W. Jenkins in Beaufort County Superior Court. Heard in the Court of Appeals 22 May 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Susan K. Hackney, for the State.*

*Sue Genrich Berry for Defendant.*

STEPHENS, Judge.

On 21 August 2006, Defendant was indicted on charges of possession with intent to sell or deliver cocaine, resisting a public officer, and of having attained the status of an habitual felon. The case was tried before a jury at the 17 September 2007 session of Beaufort County Superior Court, the Honorable Jack W. Jenkins presiding. The State called two witnesses at trial: officers Jerry Davis ("Davis" or "Detective Davis") and Jesse Dickinson ("Dickinson"), both of the Washington, North Carolina, Police Department.

Detective Davis testified as follows: on 6 August 2004, Davis was the lead detective in the Police Department's Drug Enforcement Division. Davis knew Defendant, having had between ten and twelve "conversations" with Defendant before that day. Defendant was known as "PooSack." About a week or two before 6 August, Davis confronted and searched Defendant at a bowling alley. On another occasion before 6 August, Davis strip-searched Defendant at the police station. Defendant was not charged with any offenses as a result of either of those encounters.

On 6 August at 3:41 p.m., Davis, other police officers, and one agent of the North Carolina Alcohol Law Enforcement Agency ("ALE") went to the bowling alley where Davis had previously confronted Defendant because Davis had "received information about

drug activity." The bowling alley was "a local hangout[,]" and a known drug activity area. Davis had observed or made other arrests in that area for drug-related activity. Davis and the ALE agent rode to the bowling alley in an unmarked car and "there were a couple of marked vehicles" also. All of the officers arrived at the bowling alley around the same time. Davis saw Defendant sitting outside the bowling alley in a chair among six to ten other people. Davis parked his car sixteen to twenty feet from Defendant, and Davis and the ALE agent exited the car and walked toward Defendant. Davis was wearing khaki pants and a burgundy polo shirt with a police badge embroidered on the shirt's front, and the ALE agent was in "plain clothes" and was either beside or behind Davis. Davis said, "PooSack, let me talk to you." Defendant stood up out of his chair, took two steps toward Davis, and said, "Oh, you want to search me again, huh?" Defendant did not sound irritated or agitated, "[j]ust normal[.]" Davis replied, "Yes, sir[,]" and continued walking toward Defendant. Defendant stopped ten or twelve feet from Davis, "quickly shoved both of his hands in his front pockets and then removed them." Defendant made his hands into fists and took a defensive stance. As Davis got closer to Defendant, Defendant stated, "Nope. Got to go," and "took off running" across an adjacent vacant lot.

All of the officers chased Defendant across the lot. The lot was "[v]ery unkept[,]" with grass "18 to 24 inches tall[,]" and the lot contained "lots of junk[.]" "There was no defined path through the lot . . . ." Defendant ran "with both of his hands in front of him[]" and never put his hands to his side. Davis was ten or twelve steps behind Defendant. After running 150 feet, Defendant laid down "in the push-up position[]" in a street, and the officers took Defendant into custody and searched him. The only items discovered during the search were a pack of cigarettes and $170.00 in cash. A couple of minutes later, Dickinson approached Davis with a clear plastic bag containing a substance which appeared to be crack cocaine. According to the State Bureau of Investigation, the substance in the bag contained one gram of cocaine. Davis never saw Defendant throw or drop anything during the chase.

Dickinson testified as follows: he drove to the bowling alley with Davis and the other officers. By the time Dickinson got out of his vehicle, Defendant was running through the vacant lot. After Defendant was taken into custody, Dickinson "was able to see through the grass a path from the area where we were told the group was going to be at and the path to exactly where" Defendant laid down in the

street. The path "was like two or three people had come through." Dickinson followed and searched the path, and found a clear, plastic bag. The bag was "on the top of the bent grass." The trash and other items in the vacant lot were "[o]ld[,]" but the bag was not weathered or soiled. It was "clean and undisturbed[,]" and Dickinson did not have to reach through any grass to retrieve it.

Defendant did not present any evidence. At the close of all the evidence, Defendant made a motion "to dismiss the State's case based upon a lack of evidence." The trial court denied the motion. On the charge of possession with intent to sell or deliver, the jury convicted Defendant of the lesser included offense of possession of cocaine. The jury convicted Defendant on the charge of resisting a public officer. Following the verdicts, the State proceeded on the habitual felon charge. The jury found that Defendant had attained the status of an habitual felon, and the trial court sentenced Defendant to 135 to 171 months in prison on the possession conviction. The trial court imposed a concurrent sixty-day sentence on the charge of resisting a public officer. Defendant appeals.

[1] Defendant argues that the trial court erred in denying his motion to dismiss the charge of resisting a public officer. *See* N.C. Gen. Stat. § 14-223 (2007) (proscribing the offense). When reviewing the denial of a motion to dismiss for insufficient evidence, this Court asks whether there was " 'substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.' " *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *Id.* at 597, 573 S.E.2d at 869 (citing *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781, *cert. denied*, 537 U.S. 1005, 154 L. Ed. 2d 403 (2002)). This Court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. *State v. Benson*, 331 N.C. 537, 417 S.E.2d 756 (1992).

The elements of the offense with which Defendant was charged are:

1) that the victim was a public officer;

2) that the defendant knew or had reasonable grounds to believe that the victim was a public officer;

3) that the victim was discharging or attempting to discharge a duty of his office;

4) that the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and

5) that the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse.

*State v. Dammons*, 159 N.C. App. 284, 294, 583 S.E.2d 606, 612, (citing N.C. Gen. Stat. § 14-223 (2001); 2 N.C.P.I.—Crim. 230.30 (1999)), *disc. review denied*, 357 N.C. 579, 589 S.E.2d 133 (2003), *cert. denied*, 541 U.S. 951, 158 L. Ed. 2d 382 (2004). The third element of the offense presupposes lawful conduct of the officer in discharging or attempting to discharge a duty of his office. *State v. Sparrow*, 276 N.C. 499, 173 S.E.2d 897 (1970).

In the case at bar, there is no dispute that there was substantial evidence of the first, second, and fourth elements of the offense. The evidence in support of the fourth element consisted of the officers' testimony concerning Defendant's flight, as there was no evidence that Defendant struggled with any of the officers after Defendant laid down in the street. Concerning the third element, Defendant argues that there was no evidence that Defendant "resist[ed] lawful police conduct." Concerning the fifth element, Defendant argues that he was "under no duty to submit to a search[]" and, therefore, "did not resist, delay[,] or obstruct Officer Davis by running away[.]" In response, the State argues that, under the circumstances of the encounter, "a reasonable person would not have felt compelled to cooperate with a search[]" and that, therefore, "[D]efendant did not have the right to resist by fleeing." We find Defendant's arguments the more convincing.

As the starting point in our analysis, we first determine whether the encounter between Defendant and Detective Davis was consensual or whether Detective Davis was attempting to effectuate an investigatory stop. If the encounter was consensual, Defendant was at liberty " 'to disregard the police and go about his business,' " *Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628, 113 L. Ed. 2d 690, 698 (1991)), and there was insufficient evidence of the fifth element of the offense. If, on the other hand, Davis was attempting an investigatory stop, we must then determine whether such a stop was lawful. If it was unlawful, there was insufficient evidence that Davis was dis-

charging or attempting to discharge a duty of his office. *State v. Anderson*, 40 N.C. App. 318, 322, 253 S.E.2d 48, 51 (1979) ("One resisting an illegal arrest is not resisting an officer within the discharge of his official duties.") (citations omitted). If it was lawful, there was substantial evidence that Defendant resisted, delayed, or obstructed Detective Davis in the discharge of his official duties. *State v. Swift*, 105 N.C. App. 550, 554, 414 S.E.2d 65, 67-68 (1992) ("A person is entitled to resist an illegal, but not a legal, arrest.") (citation omitted).

" 'No one is protected by the Constitution against the mere approach of police officers in a public place.' " *State v. Streeter*, 283 N.C. 203, 208, 195 S.E.2d 502, 506 (1973) (quoting *United States v. Hill*, 340 F. Supp. 344, 347 (E.D. Pa. 1972)). An encounter "will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Bostick*, 501 U.S. at 434, 115 L. Ed. 2d at 398. "[M]ere police questioning does not constitute a seizure." *Id.*

> [E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, . . . ask to examine the individual's identification, . . . and request consent to search his or her luggage, . . . as long as the police do not convey a message that compliance with their requests is required.

*Id.* at 434-35, 115 L. Ed. 2d at 398-99 (citations omitted). "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " *Id.* at 437, 115 L. Ed. 2d at 400 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569, 100 L. Ed. 2d 565, 569 (1988)).

We conclude that, considering all the circumstances surrounding the encounter prior to Defendant's flight, a reasonable person would have felt at liberty to ignore Detective Davis' presence and go about his business. There is no evidence that Davis made any show of force or otherwise communicated to Defendant that cooperation was required. Davis merely approached Defendant, asked if he could talk to him, and informed Defendant that he wanted to search him. A reasonable person would not have felt compelled to comply with Davis' request. The State acknowledges as much in its brief, stating that Defendant "was under no obligation to consent to talk with [Davis] or to agree to a search." Although Defendant's subsequent flight may have contributed to a reasonable suspicion that criminal

activity was afoot thereby justifying an investigatory stop, Defendant's flight from a consensual encounter cannot be used as evidence that Defendant was resisting, delaying, or obstructing Davis in the performance of his duties. There is no evidence that Defendant acted "unlawfully, that is . . . without justification or excuse." *Dammons*, 159 N.C. App. at 294, 583 S.E.2d at 612 (citations omitted). The trial court erred in denying Defendant's motion to dismiss the charge of resisting a public officer.

We note, however, that even if Davis was attempting to effectuate an investigatory stop, there are insufficient "specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant[ed] [the] intrusion." *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779, *cert. denied*, 444 U.S. 907, 62 L. Ed. 2d 143 (1979) (quotation marks and citation omitted). We view the circumstances "as a whole 'through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.' " *Id.* (quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C. Cir. 1976)). *Compare State v. Fleming*, 106 N.C. App. 165, 415 S.E.2d 782 (1992) (holding seizure unlawful where officer had only generalized suspicion of criminal activity based on observing the defendant walking in a high drug area), *with State v. Robinson*, 189 N.C. App. 454, 658 S.E.2d 501 (2008) (holding investigatory stop lawful where officer was in a notorious drug activity area, had a crime stoppers tip that the defendant sold large amounts of cocaine behind a particular building, and observed defendant acting suspiciously at that place while talking to another person). The only facts articulated which arguably supported the intrusion in the case at bar were that the officers "received information about drug activity[,]" the scene of the attempted stop was a known drug activity area, and Davis had made prior drug arrests in the area. These facts did not give Davis a reasonable, articulable suspicion that Defendant was involved in criminal activity. Accordingly, even if Davis was attempting an investigatory stop, such a stop was unlawful. Thus, there was insufficient evidence that Davis was discharging or attempting to discharge a lawful duty of his office. In sum, we agree with Defendant that the trial court erred in denying his motion to dismiss the charge at the close of all the evidence. The trial court's ruling on that motion is reversed.

[2] Next, Defendant argues that the trial court erred in denying his motion to dismiss the possession charge. Although our standard of review is identical to the standard set forth above, we also acknowledge that " '[i]f the evidence is sufficient only to raise a suspicion or

conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed.' " *Scott*, 356 N.C. at 595, 573 S.E.2d at 868 (quoting *Powell*, 299 N.C. at 98, 261 S.E.2d at 117).

Defendant was charged with possession with intent to sell or deliver a controlled substance—in this case, cocaine. The elements of the offense are "(1) possession of a substance; (2) the substance must be a controlled substance; and (3) there must be intent to sell or distribute the controlled substance." *State v. Nettles*, 170 N.C. App. 100, 105, 612 S.E.2d 172, 175 (citations omitted), *disc. review denied*, 359 N.C. 640, 617 S.E.2d 286 (2005); N.C. Gen. Stat. § 90-95(a)(1) (2007). Possession of a controlled substance is a lesser-included offense of possession with intent to sell or deliver a controlled substance, *State v. Turner*, 168 N.C. App. 152, 607 S.E.2d 19 (2005), and the lesser included offense has two essential elements: "[t]he substance must be possessed, and the substance must be knowingly possessed." *State v. Weldon*, 314 N.C. 401, 403, 333 S.E.2d 701, 702 (1985) (quotation marks and citation omitted); N.C. Gen. Stat. § 90-95(a)(3) (2007).

The possession element of the offenses "can be proven by showing either actual possession or constructive possession." *State v. Siriguanico*, 151 N.C. App. 107, 110, 564 S.E.2d 301, 304 (2002). "Constructive possession exists when the defendant, while not having actual possession, . . . has the intent and capability to maintain control and dominion over the narcotics." *State v. McNeil*, 359 N.C. 800, 809, 617 S.E.2d 271, 277 (2005) (quotation marks and citations omitted). "Constructive possession depends on the totality of the circumstances in each case. No single factor controls, but ordinarily the question will be for the jury." *State v. Baublitz*, 172 N.C. App. 801, 810, 616 S.E.2d 615, 621 (2005) (quotation marks and citation omitted). Furthermore, if the defendant's control of the premises where the contraband is found is non-exclusive, constructive possession of the contraband may be inferred from other incriminating circumstances. *State v. Brown*, 310 N.C. 563, 313 S.E.2d 585 (1984).

Defendant argues that there was insufficient evidence that he possessed the crack cocaine. Because the cocaine was not found in Defendant's actual possession, we evaluate Defendant's argument in the context of constructive possession. Incriminating circumstantial evidence of Defendant's possession of the cocaine included: Defendant fled upon learning that Davis wanted to search him; Defendant kept his hands in front of him during the chase; the bag

was found on the precise route Defendant took while being chased by the officers; the bag was found on top of the grass that was bent during the chase; and the bag was "clean and undisturbed." We hold that these circumstances create a reasonable inference that the crack cocaine found on the ground shortly after Defendant was apprehended came from Defendant. Viewing the evidence in the light most favorable to the State, the trial court properly denied Defendant's motion and submitted the issue to the jury. This assignment of error is overruled.

By his third assignment of error, Defendant argues that the trial court erred in its instructions to the jury on the charge of resisting a public officer. Because we have concluded that the trial court should have dismissed this charge at the close of all the evidence, we need not address this assignment of error.

**[3]** By his fourth assignment of error, Defendant argues that the trial court erred in instructing the jury that his flight from the officers was evidence of guilt. The trial court instructed the jury, generally, that

[e]vidence of flight may be considered by you, together with all other facts and circumstances in this case, in determining whether the combined circumstances amount to an admission or show a consciousness of guilt. However, proof of this circumstance is not sufficient in itself to establish [D]efendant's guilt.

Because we have concluded that the trial court should have dismissed the charge of resisting a public officer, we need only determine if the trial court erred in giving this instruction as it concerned the possession charge.

Defendant did not object to this instruction at trial; thus, our review is limited to plain error. A court commits plain error when its instructions "amount to a miscarriage of justice or . . . result[] in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987) (citations omitted), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

"[A] trial court may not instruct a jury on defendant's flight unless 'there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged.' " *State v. Levan*, 326 N.C. 155, 164-65, 388 S.E.2d 429, 433-34 (1990) (quoting *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)) (citation omitted). "Mere evidence that defendant left the scene of

the crime is not enough to support an instruction on flight. There must also be some evidence that defendant took steps to avoid apprehension." *State v. Thompson*, 328 N.C. 477, 490, 402 S.E.2d 386, 392 (1991) (citation omitted).

Davis testified that Defendant fled from the scene after Davis communicated to Defendant that he wanted to search Defendant. This evidence shows that Defendant "took steps to avoid apprehension." *Id.* The trial court did not err in giving the jury this instruction. Defendant's assignment of error is overruled.

[4] By his fifth assignment of error, Defendant contends the trial court erred in instructing the jury on constructive possession. Defendant maintains that "this is not a constructive possession case, but a circumstantial evidence case of áctual possession." As stated above, "[c]onstructive possession exists when the defendant, while not having actual possession, . . . has the intent and capability to maintain control and dominion over the narcotics." *McNeil*, 359 N.C. at 809, 617 S.E.2d at 277 (quotation marks and citations omitted). "Constructive possession depends on the totality of the *circumstances* in each case." *Baublitz*, 172 N.C. App. at 810, 616 S.E.2d at 621 (quotation marks and citation omitted) (emphasis added). Since Defendant was not found in actual possession of the crack cocaine, this is a case of constructive possession. Defendant's assignment of error is overruled.

[5] By his sixth and final assignment of error, Defendant argues that the habitual felon indictment was fatally defective. Section 14-7.3 of our General Statutes provides, in pertinent part:

> An indictment which charges a person with being an habitual felon must set forth the date that prior felony offenses were committed, the name of the state or other sovereign against whom said felony offenses were committed, the dates that pleas of guilty were entered to or convictions returned in said felony offenses, and the identity of the court wherein said pleas or convictions took place.

N.C. Gen. Stat. § 14-7.3 (2007). Section 15A-626(b) of our General Statutes provides that "[i]n proceedings upon bills of indictment submitted by the prosecutor to the grand jury, the clerk must call as witnesses the persons whose names are listed on the bills by the prosecutor." N.C. Gen. Stat. § 15A-626(b) (2007). Defendant argues that the indictment was fatally defective because it: (1) failed to allege that Defendant was at least eighteen years old at the time of his conviction

of at least two of the prior felonies; (2) failed to name a state or other sovereign against whom the prior felonies were committed; and (3) did not indicate that any witness appeared before the Grand Jury. Defendant's contentions lack merit.

First, an habitual felon indictment need not allege a defendant's age or date of birth. N.C. Gen. Stat. § 14-7.3. Defendant presents no authority which holds to the contrary.

Second, we disagree that the indictment failed to name the state or sovereign against whom the prior offenses were committed. For each of the prior felonies enumerated in the indictment, the indictment stated that the felonies were committed in violation of a specific one of North Carolina's General Statutes and that Defendant was convicted of the felony in "the Superior Court of Beaufort County, North Carolina[.]" These statements sufficiently named the state against whom the felonies were committed; namely, North Carolina. Moreover, "[i]t is well established that an indictment is sufficient under the Habitual Felons Act if it provides notice to a defendant that he is being tried as a recidivist." *State v. Williams*, 99 N.C. App. 333, 335, 393 S.E.2d 156, 157 (1990) (citations omitted). The indictment in this case provided such notice.

Finally, we agree with Defendant that the habitual felon indictment did not clearly indicate that Detective Davis, listed by the State as a witness on the bill of indictment, was called as a witness before the Grand Jury. This Court has held, however, that "although the foreman [of a Grand Jury] by statute must indicate which witness(es) were sworn and examined . . . the absence of [this] endorsement[] will not render an otherwise valid indictment fatally defective." *State v. Gary*, 78 N.C. App. 29, 33, 337 S.E.2d 70, 73 (1985) (citations omitted), *disc. review denied*, 316 N.C. 197, 341 S.E.2d 586 (1986). The bill of indictment was not fatally defective for its failure to indicate that Detective Davis testified before the Grand Jury as a witness. Defendant's sixth assignment of error is overruled.

Because there was insufficient evidence that Defendant committed the offense of resisting a public officer, the trial court erred in denying Defendant's motion to dismiss that charge. We discern no other error in Defendant's trial.

NO ERROR IN PART; REVERSED IN PART.

Judges McCULLOUGH and BRYANT concur.