IN THE MATTER OF: A.J. M.-B.

No. COA10-1350

(Filed 21 June 2011)

**1. Appeal and Error— juveniles—underlying charge dismissed— adjudication not dismissed—appeal proper**

An appeal in a juvenile matter was properly before the Court of Appeals where the trial court dismissed a charge of resisting a public officer and ordered commitment to the Department of Juvenile Justice and Delinquency Prevention. Although the trial court dismissed the case of resisting a public officer, the adjudication order was not dismissed.

**2. Search and Seizure— anonymous tip—assertion of illegality— reliability**

The denial of a juvenile's motion to dismiss a charge of resisting a public officer at the adjudication stage was reversed, along with the resulting adjudication of delinquency, where officers received an anonymous call about two juveniles walking behind a residence in an open field with a shotgun, responding officers saw two juveniles in a wood line but not in the field and not carrying a firearm, and the juveniles ran from the officers. One element of the offense presupposes lawful conduct by the officer and reasonable suspicion requires that a tip be reliable in its assertion of illegality. Since there were insufficient indicia of reliability as to any criminal activity by the juvenile, the State presented insufficient evidence that the officer acted lawfully in discharging or attempting to discharge a duty of his office.

**3. Probation and Parole— post-supervision release— revoked—violation of condition**

An order revoking a juvenile's post-release supervision was affirmed even though the underlying charge, resisting a public officer, was reversed where the juvenile had also violated an unrelated condition of his post-supervision release.

Appeal by juvenile from orders entered 30 April 2010 by Judge William G. Hamby, Jr. in Cabarrus County District Court. Heard in the Court of Appeals 28 April 2011.

**IN RE A.J. M.-B.**

[212 N.C. App. 586 (2011)]

*Attorney General Roy Cooper, by Assistant Attorney General Jonathan D. Shaw, for the State.*

*Mary McCullers Reece, for juvenile-appellant.*

CALABRIA, Judge.

A.J. M.-B. ("Andy")[1] appeals the trial court's Juvenile Orders dismissing the case of resisting a public officer and ordering Andy's commitment to the Department of Juvenile Justice and Delinquency Prevention ("DJJDP") for placement in a youth development center. We reverse in part and affirm in part.

## I. BACKGROUND

Andy was adjudicated delinquent on two counts of breaking and entering and two counts of larceny after breaking and entering. On 25 June 2008, the trial court ordered a Level 2 disposition for Andy. As part of the disposition, Andy was required to cooperate with placement in a wilderness program or any out-of-home placement deemed necessary by the treatment team. Andy was also placed on supervised probation for twelve months. Andy was required, by the conditions of his probation, to remain on good behavior, to attend school regularly, and not to violate any laws.

On 5 December 2008, the trial court adjudicated Andy delinquent on a charge of simple assault. As a result, the trial court revoked Andy's probation and ordered him committed to the DJJDP for placement in a youth development center for a minimum period of six months, and thereafter, for an indefinite period. On 23 December 2009, Andy was released from the youth development center and placed on post-release supervision.

On 20 January 2010, Andy was charged with resisting a public officer. Andy's case was heard on 5 March 2010 in Cabarrus County District Court. At the adjudication hearing, Andy did not present any evidence. At the close of all of the evidence, Andy moved to dismiss the charge of resisting a public officer, and the trial court denied the motion. The trial court then adjudicated Andy delinquent for resisting a public officer. That same day, Kelly Stoy, a juvenile court counselor, filed a Motion for Review and asked the trial court to revoke Andy's post-release supervision. The trial court continued Andy's case for disposition.

---

1. We use a pseudonym to protect the identity of the juvenile and for ease of reading.

On 30 April 2010, the trial court found that after Andy was placed on post-release supervision, he "committed another offense, missed school without an excuse, and was suspended for the remainder of the school year." During disposition, the trial court dismissed the case of resisting a public officer because, according to the court, it would serve "no useful purpose" since Andy had violated the terms of his post-release supervision. The trial court ordered Andy's commitment to the DJJDP for placement in a youth development center for a minimum of ninety (90) days and, thereafter, a period not to exceed his 18th birthday. Andy appeals.

## II. INITIAL MATTER

[1] As an initial matter, we address whether Andy's appeal is properly before us. At disposition, Andy orally entered notice of appeal. However, since the trial court dismissed the case of resisting a public officer, the exact nature of Andy's appeal to this Court is unclear. Acknowledging these circumstances, on 14 December 2010, Andy filed a petition for writ of *certiorari*, asking this Court to hear the merits of his appeal from the adjudication order.

" 'An adjudication of delinquency is not a final order' " and is therefore not appealable. *In re M.L.T.H.*, —— N.C. App. ——, ——, 685 S.E.2d 117, 121 (2009) (quoting *In re Taylor*, 57 N.C. App. 213, 214, 290 S.E.2d 797, 797 (1982)); *see also* N.C. Gen. Stat. § 7B-2602. In juvenile delinquency cases, appeal may only be taken from final orders, including an "order of disposition after an adjudication that a juvenile is delinquent[.]" N.C. Gen. Stat. § 7B-2602 (2009). *See also In re A.L.*, 166 N.C. App. 276, 277, 601 S.E.2d 538, 538 (2004) ("[a]ppealable final orders include '[a]ny order of disposition after an adjudication that a juvenile is delinquent or undisciplined.' ") (quoting N.C. Gen. Stat. § 7B-2602 (2003) (emphasis added)).

At a disposition hearing, "[t]he court may dismiss the case[.]" N.C. Gen. Stat. § 7B-2501(d) (2009). Generally, when a juvenile appeals a final disposition order, he also effectively appeals the underlying adjudication order. *See generally In re D.M.B.*, 196 N.C. App. 775, 776, 676 S.E.2d 66, 67 (2009) ("D.M.B. . . . appeals his 27 November 2007 adjudication and disposition . . . ."). The reason for also appealing the adjudication order is because "[t]he delinquency history level for a delinquent juvenile is determined by calculating the sum of the points assigned to each of the juvenile's prior *adjudications* and to the juvenile's probation status[.]" N.C. Gen. Stat. § 7B-2507 (a) (2009) (emphasis added).

IN RE A.J. M.-B.

[212 N.C. App. 586 (2011)]

In the instant case, on 30 April 2010, the trial court entered a disposition and commitment order ordering Andy's commitment to the DJJDP for placement in a youth development center. On the same day, the trial court entered a separate order, dismissing the case of resisting a public officer. The trial court stated:

> Given that the juvenile is returning to a youth development center for violating the terms of his post-release supervision, further action regarding the resisting a public officer [charge] would serve no useful purpose. As a disposition on the March 5, 2010 adjudication, the court does hereby dismiss the case of resisting a public officer.

Therefore, although the trial court dismissed the case of resisting a public officer, the adjudication order was not dismissed. The only way to appeal the adjudication of a case that was dismissed is to appeal the final order of disposition. Therefore, Andy's appeal is properly before us, and his writ of *certiorari* is denied.

### III. MOTION TO DISMISS

[2] Andy argues that the trial court erred by denying his motion to dismiss the charge of resisting a public officer at his adjudication hearing. We agree.

"We review a trial court's denial of a motion to dismiss *de novo*." *In re S.M.S.*, 196 N.C. App. 170, 171, 675 S.E.2d 44, 45 (2009) (citation omitted). "Where the juvenile moves to dismiss, the trial court must determine 'whether there is substantial evidence (1) of each essential element of the offense charged, . . . and (2) of [juvenile's] being the perpetrator of such offense.' " *In re Heil*, 145 N.C. App. 24, 28, 550 S.E.2d 815, 819 (2001) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)).

### A. Resisting a Public Officer

"If any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor." N.C. Gen. Stat. § 14-223 (2009).

[T]he elements of [N.C. Gen. Stat. § 14-223] are as follows:

1) that the victim was a public officer;

2) that the [juvenile] knew or had reasonable grounds to believe that the victim was a public officer;

3) that the victim was discharging or attempting to discharge a duty of his office;

4) that the [juvenile] resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and

5) that the [juvenile] acted willfully and unlawfully, that is inten tionally and without justification or excuse.

*State v. Dammons*, 159 N.C. App. 284, 294, 583 S.E.2d 606, 612 (2003) (citing N.C. Gen. Stat. § 14-223 (2001); 2 N.C.P.I.—Crim. 230.30 (1999)). In the instant case, the parties do not dispute that there was substantial evidence of the first, second, and fourth elements of the offense.

"The third element of the offense presupposes lawful conduct of the officer in discharging or attempting to discharge a duty of his office." *State v. Sinclair*, 191 N.C. App. 485, 489, 663 S.E.2d 866, 870 (2008). "Decisions of this Court recognize the right to resist illegal conduct of an officer." *State v. Sparrow*, 276 N.C. 499, 512, 173 S.E.2d 897, 905 (1970). Flight from a lawful stop may provide probable cause to arrest an individual for violation of N.C. Gen. Stat. § 14-223. *State v. Washington*, 193 N.C. App. 670, 668 S.E.2d 622 (2008). However, flight from an unlawful stop cannot be used to establish probable cause for an arrest. *State v. Williams*, 32 N.C. App. 204, 231 S.E.2d 282 (1977).

### B. Investigatory Stops

"As the starting point in our analysis, we first determine whether the encounter between [Andy] and [the officer] was consensual or whether [the officer] was attempting to effectuate an investigatory stop." *Sinclair*, 191 N.C. App. at 489, 663 S.E.2d at 870. In the instant case, the State concedes that the officer, Officer Michael Price ("Officer Price") of the Concord Police Department, was attempting an investigatory stop.

An investigatory stop is lawful and proper as long as the officer's actions are both " 'justified at its inception, and . . . reasonably related in scope to the circumstances which justified the interference in the first place.' " *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779 (1979) (quoting *Terry v. Ohio*, 392 U.S. 1, 20, 20 L. Ed. 2d 889, 905 (1968)). "Before a law enforcement officer can conduct a brief inves tigatory stop, 'the officer must have a reasonable suspicion of criminal activity.' " *Washington*, 193 N.C. App. at 682, 668 S.E.2d at 629 (quoting

*State v. McArn*, 159 N.C. App. 209, 212, 582 S.E.2d 371, 374 (2003) (internal quotation and citation omitted)).

> The standard set forth in *Terry* for testing the conduct of law enforcement officers in effecting a warrantless "seizure" of an individual is that "the police officer must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant [the] intrusion."

*Thompson*, 296 N.C. at 706, 252 S.E.2d at 779 (quoting *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906). Therefore, in order to determine whether Officer Price lawfully discharged or attempted to discharge a duty of his office, we must determine whether he had reasonable suspicion to stop Andy.

### C. Reasonable Suspicion

### 1. Anonymous Tip Identifying a Particular Person

The instant case is similar to *Florida v. J.L.*, 529 U.S. 266, 146 L. Ed. 2d 254 (2000). In *J.L.*, there was also an anonymous caller who called law enforcement to express concern about a young person possessing a firearm. However, in *J.L.*, the caller identified the person carrying the gun as "a young black male standing at a particular bus stop and wearing a plaid shirt . . . carrying a gun." *Id.* at 268, 146 L. Ed. 2d at 259. When the officers in *J.L.* approached a group of black males at a bus stop and observed the defendant in a plaid shirt, they frisked the defendant and seized a gun from his pocket without observing anything suspicious. *Id.* The Supreme Court found that, in *J.L.*,

> the anonymous tip, with nothing more, did not constitute a reasonable suspicion and therefore did not justify the subsequent frisk of defendant. The Court reasoned that "unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.' " *[J.L.*, 529 U.S.] at 270, 146 L. Ed. 2d at 260 (quoting *Alabama v. White*, 496 U.S. 325, 329, 110 L. Ed. 2d 301, 308 (1990) (citations omitted)).

*In re D.D.*, 146 N.C. App. 309, 322-23, 554 S.E.2d 346, 355 (2001).

In the instant case, at 1:00 p.m. on 20 January 2010, an anonymous caller reported to law enforcement "two juveniles in Charlie district . . . walking, supposedly with a shotgun or a rifle" in "an open field behind a residence." A dispatcher relayed the information to

**IN RE A.J. M.-B.**

[212 N.C. App. 586 (2011)]

Officer Price, who exited his patrol vehicle and proceeded to an open field behind the residence, "about forty feet from where the initial call was called in." Officer Price was joined by two other officers, but they did not observe anyone in the field. The other officers then directed Officer Price to look to his right. When Officer Price looked to his right, he observed two juveniles "pop their heads out of the wood line" and look at him. However, neither of the juveniles was carrying firearms.

When Officer Price called out to the juveniles to stop, they "turned to the right and ran to the right around the [residence]." As Officer Price approached the residence, an unidentified female was standing outside. Officer Price testified that she asked him, "Are you looking for the two juveniles?" When Officer Price replied in the affirmative, the female told him that she observed two juveniles run down the road.

The Supreme Court in *J.L.* found that "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." 529 U.S. at 270, 146 L. Ed. 2d at 260 (internal quotation and citation omitted). Therefore, information regarding a specific person possessing a gun, without observing anything suspicious, did not provide reasonable suspicion to justify the frisk of the defendant. In the instant case, the anonymous tip alone, without more evidence, also did not establish reasonable suspicion. Therefore, since the State did not present sufficient specific, articulable facts to warrant the stop, Andy's subsequent detention and arrest were not justified.

### 2. Knowledge of Concealed Criminal Activity

[R]easonable suspicion does not arise merely from the fact that the individual met the description given to the officers. As the Court stated in *J.L.*,

an accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*State v. Hughes*, 353 N.C. 200, 209, 539 S.E.2d 625, 632 (2000) (quoting *J.L.*, 529 U.S. at 272, 120 S.Ct. at 1379, 146 L. Ed. 2d at 261).

**IN RE A.J. M.-B.**

[212 N.C. App. 586 (2011)]

At the 5 March 2010 juvenile hearing, Officer Price testified as follows:

Q. [the State]. What was the description of the juveniles you were looking for?

A. [Officer Price]. I'm not exactly sure exactly what the description was. I don't—right now, but they said two juveniles in the area of the field behind the house we got the call at.

Q. But you had a description at the time?

A. Yes.

Q. And did [Andy] match that description?

A. Yes.

Andy's counsel requested that Officer Price's testimony be stricken since he could not provide the court with a description of the juveniles. The court overruled the objection. On cross-examination, Andy's counsel engaged in the following colloquy with Officer Price:

Q. Officer, did you take the call from—about these juveniles?

A. Excuse me?

Q. Did you speak to the caller about these juveniles?

A. No, I did not.

Q. Do you know who the caller was?

A. No.

Q. Do you know if this was a source that the department had relied upon in previous cases?

A. No.

Q. When you first saw [Andy] here, did you see a rifle or shotgun?

A. No.

Q. Thank you, sir.

Andy's counsel then argued to the court that "[a]ll you have here . . . is a case where multiple officers . . . are out here on an anonymous phone call about a rifle and a shotgun." He further argued that the officers saw two juveniles looking at them, but that there was no testimony that they looked frightened or that they looked suspicious in

any way, and they were not even in the field but were apparently near the field. Furthermore, Officer Price did not see Andy in the field, nor did he observe Andy carrying a firearm of any type, and the anonymous tipster had no knowledge of concealed criminal activity. *See Hughes*, 353 N.C. at 209, 539 S.E.2d at 632.

The Supreme Court suggested in *J.L.* that there may be "circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability." 529 U.S. at 273, 146 L. Ed. 2d at 262. However, the Court expressly held that a mere allegation that a person is carrying a firearm, without more, is insufficient to justify such an exception to the rule that officers must have reasonable suspicion before conducting an investigatory stop. *Id.* at 272-73, 146 L. Ed. 2d at 261-62.

In the instant case, the description of the juveniles' location merely helped to identify them. Such a tip, however, did not show that the tipster had knowledge of concealed criminal activity. There is no evidence in the record showing circumstances under which the danger alleged by the anonymous tipster—that two juveniles walking and carrying a firearm—justified Andy's subsequent detention without a showing that the tipster had knowledge of concealed criminal activity.

### D. Insufficient Evidence

Reasonable suspicion requires that a tip be reliable in its assertion of illegality. The State's evidence, regarding the anonymous tip or Andy's actions at the time of the stop, was not sufficient to indicate any reliability as to the criminal activity alleged in the anonymous tip. The anonymous tip and subsequent corroboration by Officer Price merely established the reliability of the tip to identify a "determinate person." Since there were insufficient indicia of reliability as to any criminal activity by Andy established through the tip or subsequent corroboration by Officer Price, the State presented insufficient evidence that Officer Price acted lawfully "in discharging or attempting to discharge a duty of his office." *Sinclair*, 191 N.C. App. at 489, 663 S.E.2d at 870. Accordingly, we reverse the trial court's denial of Andy's motion to dismiss, and reverse the trial court's 5 March 2010 order adjudicating him delinquent for the charge of resisting a public officer.

### IV. REVOCATION OF POST-RELEASE SUPERVISION

[3] Andy also argues that the trial court's order revoking his post-release supervision should be reversed and remanded because "[t]he new adjudication was a significant part of the basis" for revoking his

post-release supervision and the trial court dismissed the case of resisting a public officer. We disagree.

Initially, we note that in the portion of his brief addressing this argument, Andy failed to include "a concise statement of the applicable standard(s) of review for [this] issue[.]" N.C. R. App. P. 28(b)(6) (2010). Furthermore, he failed to include "citations of the authorities upon which [he] relies." *Id.* Therefore, we dismiss Andy's argument. *Id.*

However, even assuming *arguendo* Andy's argument is properly presented, the trial court's revocation of his post-release supervision was proper.

N.C. Gen. Stat. § 7B-2516 (2009) states, in pertinent part:

(b) If the court determines by the greater weight of the evidence that the juvenile has violated the terms of post-release supervision, the court may revoke the post-release supervision or make any other disposition authorized by this Subchapter.

(c) If the court revokes post-release supervision, the juvenile shall be returned to the Department for placement in a youth development center for an indefinite term of at least 90 days
. . . .

N.C. Gen. Stat. § 7B-2516 (2009).

In the instant case, there were several conditions for Andy's post-release supervision. He was required to enroll in school and attend Cabarrus County Schools. In addition, Andy agreed to abide by all of the other terms of his post-release supervision. Furthermore, Andy agreed that if a court found that he violated "one or more" of the terms, he could be returned to a youth development center.

On 30 April 2010, the trial court revoked Andy's post-release supervision because the court found that he "missed school without an excuse, and was suspended for the remainder of the school year." Therefore, even though we reverse the trial court's order adjudicating Andy delinquent for the offense of resisting a public officer, the trial court was only required to find by the greater weight of the evidence that he violated "one or more" of the conditions of his post-supervision release. Andy does not dispute on appeal that the greater weight of the evidence showed that he "missed school without an excuse" or that he "was suspended for the remainder of the school year." "These findings are unchallenged on appeal and are therefore binding on this

Court." *In re D.L.H.*, 364 N.C. 214, 218, 694 S.E.2d 753, 755 (2010). Furthermore, these findings are sufficient to support the trial court's revocation of Andy's post-release supervision. The trial court's order revoking Andy's post-supervision release and committing him to the DJJDP for placement in a youth development center for a minimum of ninety (90) days and, thereafter, a period not to exceed his 18th birthday, is affirmed.

## V. CONCLUSION

The trial court's denial of Andy's motion to dismiss, and the 5 March 2010 adjudication order, are reversed. Even though the trial court dismissed the case of resisting a public officer, under N.C. Gen. Stat. § 7B-2507(a), if Andy's adjudication was not reversed, his case of resisting a public officer would affect his delinquency history level, which is determined by calculating the sum of the points assigned to each of his prior adjudications. The trial court's 30 April 2010 order revoking Andy's post-supervision release is affirmed.

Affirmed in part, reversed in part.

Judges ERVIN and THIGPEN concur.