An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e   P r o c e d u r e .

NO. COA13-677

NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

STATE OF NORTH CAROLINA

|   |   |
|---|---|
| v. | Craven County<br>Nos. 11 CRS 50791, 12 CRS 1014 |

EDDIE TYRONE DAVIS,
    Defendant.

Appeal by defendant from judgment and commitment entered 27 November 2012 by Judge Jack W. Jenkins in Craven County Superior Court. Heard in the Court of Appeals 5 November 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General G. Mark Teague, for the State.*

> *Kimberly P. Hoppin for defendant-appellant.*

BRYANT, Judge.

Even if the operator of a vehicle is not the owner, an officer is entitled to make a brief investigatory stop when he knows a vehicle is in violation of North Carolina law because that stop is supported by reasonable suspicion. Where defendant flees a lawful encounter with an officer who is discharging the

duties of his office, this constitutes resisting a public officer as proscribed by N.C. Gen. Stat. § 14-223. Where defendant stipulates to the existence and felony classifications of his prior out-of-state convictions, such convictions are properly classified as Class I felonies pursuant to the statutory default level set by N.C. Gen. Stat. § 15A-1340.14(e). The felony class level of an out-of-state felony conviction may be raised from a default level of Class I only upon the trial court's finding that the out-of-state conviction is substantially similar to a North Carolina felony which is classified higher than Class I.

The facts tended to show that on the evening of 4 March 2011, while parked at the Five Point gas station on 1210 Broad Street, Officer David Welch of the New Bern Police Department observed a white Ford Taurus park at the gas station. The officer's attention was drawn to the vehicle because he had lost a white Ford Taurus during previous unrelated pursuits.

Officer Welch ran the license plate number to determine the registered owner of the vehicle and learned that the vehicle was registered to a female. The driver and passenger of the vehicle, however, were both males.[1] Officer Welch also learned that the insurance on the vehicle had lapsed and that there was a North

---

[1] Officer Welch testified at trial that, based on his observations of the vehicle, both occupants were male. Officer Welch's assumption that both occupants were male was confirmed when the vehicle was stopped.

Carolina Department of Motor Vehicles pick-up order for the white Ford Taurus.

When the vehicle pulled out of the gas station, Officer Welch followed and activated his lights to conduct a traffic stop based on the lapsed insurance and pick-up order. Immediately upon pulling over, the driver got out of the car and fled on foot from Officer Welch. Officer Welch chased the driver and shouted out to him that he was under arrest. During the chase Officer Welch observed the driver throw a white plastic bottle, which was retrieved by Officer Welch while he continued to follow the driver.

Officer Welch chased the driver through a large field to an apartment building where he observed the driver enter an apartment. Upon reaching the apartment, Officer Welch found that the door was locked. After knocking, a woman answered and allowed him inside. Once inside, Officer Welch found a man lying in a bed breathing heavily. Officer Welch was able to identify the man as the driver who fled. Despite Officer Welch's presence in the bedroom, the man remained on the bed either sleeping or pretending to be asleep. Officer Welch called out to him, but the man was unresponsive. Officer Welch then grabbed the man's wrist; at which point, the man became immediately alert. The man, defendant Eddie Tyrone Davis ("defendant"), was arrested. The pill bottle thrown by

defendant during the chase was found to contain three rock-shaped substances in clear plastic baggies. These substances were later determined to be 0.3 grams of cocaine base.

On 14 November 2011, defendant was indicted for possession with intent to sell and deliver cocaine, resisting a public officer, and possession of drug paraphernalia. On 26 November 2012, this matter came before the Honorable Jack W. Jenkins in Superior Court of Craven County. On 27 November 2012, a jury found defendant guilty of possession of cocaine, resisting a public officer, and possession of drug paraphernalia. During sentencing, defendant admitted to attaining the status of habitual felon; defendant was sentenced to a mitigated term of 87 to 114 months. Defendant appeals.

_____

On appeal, defendant raises the following issues: whether the trial court erred by (I) denying defendant's motion to dismiss the charge of resisting an officer; and (II) sentencing defendant as a prior record level VI based on his previous convictions from another jurisdiction.

*I.*

Defendant first argues that the trial court erred in denying his motion to dismiss the charge of resisting an officer due to insufficient evidence. We disagree.

The standard of review for a motion to dismiss is whether

substantial evidence existed "(1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Sinclair*, 191 N.C. App. 485, 488, 663 S.E.2d 866, 869—70 (2008) (citations omitted). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *Id.* at 488, 663 S.E.2d at 870. Since this is an appeal from the denial of a motion to dismiss, the evidence is viewed "in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *Id.*

The elements of resisting a public officer, as proscribed in N.C. Gen. Stat. § 14-223, are:

> (1) that the victim was a public officer;
>
> (2) that the defendant knew or had reasonable grounds to believe that the victim was a public officer;
>
> (3) that the victim was discharging or attempting to discharge a duty of his office;
>
> (4) that the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and
>
> (5) that the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse.

*State v. Dammons*, 159 N.C. App. 284, 294, 583 S.E.2d 606, 612

(2001) (citing N.C.G.S. § 14-223).

Although defendant concedes to the first, second, fourth, and fifth elements, defendant identifies the third element as the reason for the trial court's error. Defendant argues that the third element was not satisfied by Officer Welch's unlawful stop because the lapsed insurance and pick-up order were violations that only the owner of the vehicle could be liable for; as such, only the owner of the vehicle could be engaged in the criminal activity required for reasonable suspicion. Defendant contends that since he is not the owner of the vehicle, Officer Welch's reasonable suspicion formed as a result of the violation of N.C. Gen. Stat. § 20-313 (2011)[2] was misplaced. Thus, we must determine whether the stop was lawful and whether defendant in fact resisted, delayed or obstructed

---

[2] Pursuant to N.C.G.S. § 20-313, "Operation of motor vehicle without financial responsibility a misdemeanor,"

> (a) [A]ny owner of a motor vehicle registered or required to be registered in this State who shall operate or permit such motor vehicle to be operated in this State without having in full force and effect the financial responsibility required by this Article shall be guilty of a Class 3 misdemeanor.

> (b) Evidence that the owner of a motor vehicle registered or required to be registered in this State has operated or permitted such motor vehicle to be operated in this State, coupled with proof of records of the Division of Motor Vehicles indicating that the owner did not have financial responsibility applicable to the operation of the motor vehicle in the manner certified by him for purposes of G.S. 20-309, shall be prima facie evidence that such owner did at the time and place alleged operate or permit such motor vehicle to be operated without having in full force and effect the financial responsibility required by the provisions of this Article.

Officer Welch in discharging the duties of his office. *Sinclair*, 191 N.C. App. at 489, 663 S.E.2d at 870.

For a brief investigatory stop to be lawful, an officer must have a reasonable suspicion, "based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Washington*, 193 N.C. App. 670, 682, 668 S.E.2d 622, 629 (2008) (citation omitted). Therefore, we examine the information known by Officer Welch prior to attempting the stop, as opposed to the information known by defendant, the individual being subjected to the stop. *Id.*

Prior to pulling defendant over, Officer Welch knew that the insurance on the vehicle had lapsed in violation of N.C.G.S. § 20-313, and that there was a pick-up order for the tags. Officer Welch also knew that defendant was not the owner of the vehicle. Therefore, the dispositive question is whether there was sufficient reasonable suspicion to conduct an investigatory stop of defendant-driver when the violation of N.C.G.S. § 20-313 imposes criminal liability on the *owner* of the vehicle.

In *State v. Washington*, this Court held that there was insufficient probable cause to *arrest* someone that was operating, but did not own, an unregistered vehicle with expired insurance. *Washington*, 193 N.C. App. at 678, 668 S.E.2d at 627

(emphasis added). In *Washington*, where the owner of the vehicle was the passenger, this Court recognized the well-established rule that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* at 676—77, 668 S.E.2d at 626 (citations omitted). However, this Court also held that the officer "had the right to make a brief investigatory stop of the defendant . . . based on his operation of a motor vehicle with no insurance and with an expired registration plate." *Id.* at 678, 668 S.E.2d. at 627 (citations omitted); *see also State v. Johnson,* 186 N.C. App. 673, 675, 651 S.E.2d 907, 908 (2007) ("The improper tags, standing alone, gave the deputies sufficient cause to stop defendant."); *State v. Edwards,* 164 N.C. App. 130, 136, 595 S.E.2d 213, 218 (2004) ("[T]hat defendant's vehicle had an expired Illinois registration plate . . . was sufficient in and of itself to warrant initially stopping defendant.").

Here, Officer Welch had a reasonable, articulable suspicion sufficient to stop defendant. Even though Officer Welch believed defendant was not the registered owner of the vehicle, Officer Welch could still conduct an investigatory stop: the operation of the vehicle without proper insurance was a violation of N.C.G.S. § 20-313. The lapse in insurance in violation of N.C.G.S. § 20-313 and pick-up order by the DMV of

the vehicle constitute reasonable suspicion to conduct an investigatory stop. Accordingly, Officer Welch's investigatory stop was supported by reasonable suspicion and was, therefore, lawful.

As the investigatory stop was lawful, we next determine whether defendant's conduct constituted resisting, delaying or obstructing Officer Welch while he was discharging or attempting to discharge the duties of his office.

When an investigatory stop is lawful, the subject's encounter with the officer is not consensual and the subject does not have a right to resist. *Washington,* 193 N.C. App. at 682, 668 S.E.2d at 629—30 (citation omitted). Flight from a lawful investigatory stop contributes to establishing probable cause that defendant is resisting or obstructing an officer in the discharge of his duties in violation of N.C.G.S. § 14-223. *Id.*

Here, defendant fled from Officer Welch immediately upon stopping the vehicle, quickly entered an apartment and locked the door, and then pretended to be asleep only responding to Officer Welch when Officer Welch grabbed his wrist. Defendant's actions constituted resistance, delay, and obstruction of Officer Welch as he attempted to stop a vehicle being operated without proper insurance and seize the license plate tag pursuant to the DMV pick-up order. We acknowledge defendant's

argument that his flight cannot retroactively provide reasonable suspicion for Officer Welch to perform the stop; however, defendant's flight from a lawful investigative stop is sufficient evidence of resisting or obstructing an officer in the discharge of his duties.

Again, we note defendant does not challenge the other elements of resisting a public officer: that Officer Welch was a police officer; that defendant knew or had reasonable grounds to believe that Officer Welch was a public officer; that defendant resisted, delayed, or obstructed Officer Welch in discharging or attempting to discharge a duty of his office; and that defendant acted willfully and unlawfully, that is intentionally and without justification or excuse. Because we find that Officer Welch was discharging or attempting to discharge a duty of his office, defendant's argument is overruled.

*II.*

Defendant next argues that the trial court erred in calculating his prior criminal record level for sentencing. We agree.

A trial court's determination of a defendant's prior record level for sentencing is a conclusion of law that is reviewed *de novo*. *State v. Fraley*, 182 N.C. App. 683, 691, 643 S.E.2d 39, 44 (2007). This determination is preserved for appeal

regardless of whether the defendant objects at the sentence hearing. N.C. Gen. Stat. §§ 15A-1446(d)(5), (d)(18) (2011).

Under North Carolina General Statutes, section 15A-1340.14(a), "[t]he prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the offender's prior convictions that the court . . . finds to have been proved in accordance with this section." N.C. Gen. Stat. § 15A-1340.14(a) (2011). In classifying prior convictions from another jurisdiction,

> a conviction occurring in a jurisdiction other than North Carolina is classified as a Class I felony if the jurisdiction in which the offense occurred classifies the offense as a felony . . . . If the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points.

*Id.* § 15A-1340.14(e) (2011). Pursuant to N.C. Gen. Stat. § 15A-1340.14(f), a defendant's prior convictions may be proven by: "(1) Stipulation of the parties[.]" *Id.* § 15A-1340.14(f) (2011). "The rules for proving the proper number of prior record level points that should be assigned to specific out-of-state convictions differ from those applicable to in-state convictions . . . ." *State v. Bohler*, 198 N.C. 631, 634, 681 S.E.2d 801, 804 (2009). "[T]he question of whether a conviction

under an out-of-state statute is substantially similar to an offense under North Carolina statutes is a question of law to be resolved by the trial court." *State v. Hanton*, 175 N.C. App. 250, 255, 623 S.E.2d 600, 604 (2006). As such, "[s]tipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate." *State v. Prevette*, 39 N.C. App. 470, 472, 250 S.E.2d 682, 683 (1979) (citations omitted).

> Thus, while the trial court may not accept a stipulation to the effect that a particular out-of-state conviction is "substantially similar" to a particular North Carolina felony or misdemeanor, it may accept a stipulation that the defendant in question has been convicted of a particular out-of-state offense and that this offense is either a felony or a misdemeanor under the law of that jurisdiction.

*Bohler*, 198 N.C. at 637—38, 681 S.E.2d at 806.

Here, defendant entered into a plea agreement with the State whereby he admitted to having attained habitual offender status in exchange for the State not opposing sentencing in the low end of the mitigated range. Pursuant to this agreement, defendant stipulated to ten prior offenses listed in the State's prior record level worksheet which included six felony offenses from Florida. The State classified five of the six Florida offenses as Class I felonies on the worksheet. This Court has held that where the State classifies an out-of-state felony

conviction as a Class I felony, rather than as a higher class level felony, the statutory default felony level of Class I set by N.C.G.S. § 15A-1340.14(e) is met. *See State v. Hinton*, 196 N.C. App. 750, 755, 675 S.E.2d 672, 675 (2009). Accordingly, defendant's stipulation to having been convicted of five prior Florida offenses and to their classification as felonies was an effective stipulation. Therefore, these five Florida felonies were properly classified at the statutory default level as Class I felonies.

Defendant also argues that the State presented insufficient evidence that his prior offenses from Florida were felonies or were substantially similar to North Carolina offenses. Specifically, defendant contends that "[w]ithout evidence that these Florida offenses were felonies . . . they would be treated as Class 3 misdemeanors." Defendant's argument as to the Class I felonies lacks merit for, as noted above, defendant's stipulation to the existence of the prior out-of-state convictions on the worksheet presented by the State showing the prior convictions to be felonies constituted sufficient evidence that these out-of-state offenses could be classified as class I felonies under the default rules of N.C.G.S. § 15A-1340.14(e).

However, we agree with defendant that the trial court erred in accepting a sixth Florida offense as a Class G felony. On the prior conviction worksheet, the State sought to have a sixth

Florida offense, "F-SELL COCAINE," classified at a higher level as a Class G felony. To determine whether the out-of-state offense and the North Carolina offense are "substantially similar," warranting classification higher than the default Class I felony designation, the trial court "should examine copies of the other state's statutes, and compare their provisions to the criminal laws of North Carolina." *State v. Claxton*, __ N.C. App. __, __, 736 S.E.2d 603, 608 (2013) (citation, quotation, brackets, and ellipsis omitted).

In support of its classification of "sale of cocaine . . . as a class G [felony]," the State submitted a copy of the applicable Florida statute to the trial court for its examination of "the elements of the charges . . . used to create [defendant's] status," commenting that elements of the charges in the Florida statute "would be substantially similar to our elements here in our state." After receiving a copy of the Florida statute and the State's prior record level worksheet, the trial court then determined that defendant had a prior record level of VI and sentenced defendant to a term of 87—114 months. While under the circumstances it would *appear* that the trial court accepted the State's contention that the Florida felony sale of cocaine conviction is equivalent to a North Carolina Class G felony, the transcript reveals the trial court made no actual finding of substantial similarity as to this

particular offense. Moreover, the prior record level worksheet attached to the order of judgment and commitment has an empty box next to the following wording: "For each out-of-state conviction listed in Section V on the reverse, the [trial court] finds by a preponderance of the evidence that the offense is substantially similar to a North Carolina offense and that the North Carolina classification assigned to this offense in Section V is correct." The lack of a formal finding by the trial court during the sentencing hearing, combined with the unchecked box on the worksheet, confirms that the trial court failed to make a finding of substantial similarity. Therefore, we must thus find that the trial court erred in determining defendant's prior record level pursuant to N.C.G.S. § 15A-1340.14.

Where the trial court has erred in determining a defendant's prior record level, "[t]his Court applies a harmless error analysis to improper calculations of prior record level points." *State v. Lindsay*, 185 N.C. App. 314, 315—16, 647 S.E.2d 473, 474 (2007) (citations omitted). However, in the instant case we cannot say this error was harmless, as the trial court's failure to make a finding of substantial similarity between the Florida and North Carolina offenses of sale of cocaine affects two prior record level points by dropping the felony's classification from a Class G to a Class I. Deducting

two points from defendant's prior record level total of 19 points leaves 17 points which qualifies as a prior record level V, a lower level than defendant's sentencing level of VI. Therefore, the error in failing to find the Florida statute sufficiently similar to North Carolina's sale of cocaine statute was not harmless since defendant would be considered a lower level offender. *See id.* (holding that the amount of deducted points must affect the defendant's record level to require a remand for a new sentencing hearing). Therefore, we reverse and remand for a new sentencing hearing.

Affirmed in part, reversed and remanded in part.

Judges McGEE and STROUD concur.

Report per Rule 30(e).