STATE v. THOMAS W. MANEY, ABRA MANEY, AND GUY ANDERS.

(Filed 10 June, 1927.)

**Criminal Law—Assault—Husband and Wife — Self-Defense — Excessive Force—Questions for Jury.**

> Where a wife is assaulted in the presence of her husband by one using insulting language relating to her innocence and virtue, and the assailant had put his arm about her, the husband has the same right as the wife in using sufficient force to repel the attack, and the question of whether the force he used in striking the assailant in the face was excessive for that purpose, or prompted by a spirit of revenge, etc., is one for the jury.

APPEAL by defendant Thomas W. Maney from *Stack, J.,* and a jury, at August Term, 1926, of BUNCOMBE. New trial.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*J. E. Swain, R. Sidney King, and A. Hall Johnston for defendant.*

CLARKSON, J. The defendant Thomas W. Maney, Abra Maney, and Guy Anders were indicted for assault with intent to kill Gus Harwood. Abra Maney and Guy Anders were acquitted by the jury, and Thomas W. Maney was convicted of simple assault. Thomas W. Maney was sentenced to serve 30 days in jail and pay all cost.

Thomas W. Maney testified in part: "I struck him in defense of my wife the first time, in defense of myself when he tried to cut me with a razor. When I hit him with my fist the first time, he had a hold of my

wife, and I struck him to make him turn her loose. . . . I struck Gus Harwood because he was assaulting my wife, and using that vile language to her. I would do the same thing, Mr. ............., if he assaulted your wife in my presence."

Mrs. Thomas W. Maney testified in part: "Gus Harwood was in a drunken condition, and when he saw me he come up to me in a very insulting manner and took hold of me, and said some very insulting remarks to me as to what he intended to do to me (language is too vulgar to use). But it reflected upon my purity and virtue. When he did this, my husband, Tom Maney, struck Harwood with his fist and made him release me, and then Harwood turned on my husband and made an assault on him in such a violent manner, and used such vile and insulting language in my presence, and in the presence of my children, that I was forced to run into the house and gather up my little children and leave home, going into the woods, and when I left, Gus Harwood and his friends were assaulting my husband."

The testimony of Thomas W. Maney was substantially that of his wife, and they were corroborated by Abra Maney and Guy Anders. A number of reputable citizens testified that the general reputation of defendant was good.

The court below charged the jury as follows, to which exception and assignment of error was duly made: "As to Tom Maney, if you find that he struck Gus Harwood, if you find beyond a reasonable doubt that the defendant Tom Maney struck Gus Harwood, at first because he put his arms around his wife and for using certain language before his wife and children, then he would not have been justified in hitting Gus Harwood in the face and knocking him down." We think the charge of the court below is not borne out by the law, and cannot be sustained under the facts and circumstances of this case.

Cooley's Blackstone, Vol. 2 (3 ed.), p. 2, lays down the law as follows: "The defense of one's self, or the mutual and reciprocal defense of such as stand in the relations of husband and wife, parent and child, master and servant. In these cases, if the party himself, or any of these of his relations be forcibly attacked in his person or property, it is lawful for him to repel force by force; and the breach of the peace which happens is chargeable upon him only who began the affray. For the law, in this case, respects the passions of the human mind; and (when external violence is offered to a man himself, or those to whom he bears a near connection), makes it lawful in him to do himself that immediate justice, to which he is prompted by nature, and which no prudential motives are strong enough to restrain. It considers that the future process of law is by no means an adequate remedy for injuries accompanied with force; since it is impossible to say to what wanton lengths

of rapine or cruelty outrages of this sort might be carried, unless it were permitted a man immediately to oppose one violence with another. Self-defense, therefore, as it is justly called the primary law of nature, so it is not, neither can it be in fact, taken away by the law of society. In the English law, particularly, it is held an excuse for breaches of the peace, nay, even for homicide itself; but care must be taken that the resistance does not exceed the bounds of mere defense, and prevention; for then the defender would himself become an aggressor." Brill, Vol. 2, Cyc. Criminal Law, secs. 722, 723.

In 1 Bishop on Criminal Law (9 ed.), p. 623, it is said: "Ordinarily, if not always, one may do in another's defense whatever the other might in the circumstances do for himself. The common case is where a father, son, brother, husband, servant, or the like, protects by the stronger arm the feebler. The right to do this is unquestioned."

In *S. v. Johnson,* 75 N. C., at p. 175, it is said: "The proposition is true that the wife has the right to fight in the necessary defense of her husband, the child in the defense of his parent, the servant in defense of his master, and reciprocally; but the act of the assailant must have the same construction in such cases as the act of the assisted party should have had if it had been done by himself; for they are in a mutual relation one to another. Although the law respects the human passions, yet it does not allow this interference as an indulgence or revenge, but merely to prevent injury. The son, therefore, is allowed to fight only in the necessary *defense* of the father; and to excuse himself, he must plead and show that Shipwash could have beat his father, had the son not interfered. 3 Bl., 3, and note; 1 Hale Pl. Cr., 484; Bac. Ab. Master and Servant, P." *S. v. Brittain,* 89 N. C., 481; *S. v. Bullock,* 91 N. C., p. 614; *S. v. Cox,* 153 N. C., 638; *S. v. Greer,* 162 N. C., 640; *S. v. Gaddy,* 166 N. C., 341; *Roberson v. Stokes,* 181 N. C., at p. 63; *S. v. Holland,* 193 N. C., p. 713.

The testimony of Mrs. Maney was to the effect that Gus Harwood, in a drunken condition, came up to her and in a very insulting manner took hold of her and made insulting remarks, too vulgar to use, reflecting on her purity and virtue. Her husband, the defendant, struck him with his fist to make Harwood turn her loose. She had a right to strike Harwood to make him turn her loose, and her husband had the same right to strike him. The defendant did what he had a right to do. Such action was prompted by the primary law of nature—a husband's right to protect and defend his wife. If true, he acted under the highest impulse and instinct to protect the person of his wife from one who had assaulted her, and should not be held to an accountability by the law.

The court below charged the jury that if they found beyond a reasonable doubt that defendant Maney struck Harwood, at first because he

put his arms around his wife and for using certain language before his wife and children, that he would not be justified in hitting Harwood in the face and knocking him down. We cannot sustain the charge. It was a question for the jury to say, under the facts and circumstances of the case, whether defendant hit Harwood in the face and knocked him down to make Harwood turn his wife loose. He had a right to defend his wife against the assault of Harwood. The question of excessive force was for the jury.

In the oft-quoted case of *S. v. Perry,* 50 N. C., at p. 10, the rule of abusive language is thus stated: "If one person, by such abusive language towards another as is calculated and intended to bring on a fight, induces that other to strike him, he is guilty, though he may be unable to return the blow. He is undoubtedly the immediate cause of the breach of the peace, and is morally the more guilty of the two."

In such a case, both are guilty of an affray—the one who strikes the blow and the one who uses the abusive language that prompted the blow. The vice in the charge is that the court below coupled two propositions in one and said that defendant was not justified if he struck Harwood in the face and knocked him down (1) because he put his arms around his wife, (2) and for using certain language before his wife and children. As to the first proposition, it was for the jury to say whether he was justified in striking him in the face and knocking him down to make him turn loose his wife, and in so doing, whether he used excessive force. As to the second proposition, it was for the jury to say whether defendant struck Harwood for the abusive language used before his wife and children.

Under the facts and circumstances of this case, "The measure of force which the defendant was permitted to use under such circumstances ought not to be weighed in 'golden scales.'" *S. v. Hough,* 138 N. C., at p. 668. The probative force of the evidence is for the jury.

For the reasons given, there must be a

New trial.