STATE OF NORTH CAROLINA v. ROBERT DOUGLAS ANDERSON

No. 7823SC988

(Filed 20 March 1979)

**1. Assault and Battery § 15.5— necessity for instruction on self-defense**

The trial court is required to instruct the jury on the question of self-defense when that question is raised by the evidence, even in the absence of a request to do so.

**2. Arrest and Bail § 5.1— use of force by officer**

An officer of the law has the right to use such force as he may reasonably believe necessary in the proper discharge of his duties. G.S. 15A-401(d)(1).

**3. Assault and Battery § 15.4— excessive force by officer—right to repel**

When there is evidence tending to show the excessive use of force by a law enforcement officer, the trial court is required to instruct the jury that the force used against the officer was justified or excused if the assault was limited to the use of reasonable force by defendant in defending himself from excessive force.

**4. Arrest and Bail § 5.1; Assault and Battery § 9— lawful arrest—excessive force—right to defend self**

The right to use force to defend oneself against the excessive use of force during an arrest may arise despite the lawfulness of the arrest, and the officer's use of excessive force does not render the arrest illegal.

**5. Assault and Battery § 15.5— assault on law officer—right to instruction on self-defense**

In a prosecution for assault on a police officer in the performance of his duties, defendant was entitled to an instruction on self-defense where defendant presented evidence tending to show that he put his hand on an officer's shoulder when officers forcibly arrested his girl friend and told the officer that his girl friend "ain't done nothing," that officers, without provocation, then attacked defendant, and that defendant was merely protecting himself from the unprovoked attack by the officers.

**6. Arrest and Bail § 6; Assault and Battery § 9— defense of arrestee by bystander**

A bystander who comes to the aid of an arrestee must do so at his own peril and will be excused only when the arrestee would himself be justified in defending himself from the conduct of the arresting officers.

**7. Arrest and Bail § 6.2; Assault and Battery § 15.5— right of bystander to aid arrestee—instruction**

In this prosecution for assault on an officer in the performance of his duties, defendant's evidence presented a question for the jury as to the reasonableness of the officer's conduct in arresting a third person, and defendant was entitled to an instruction that he was justified in interfering with the arrest if the arrestee was herself justified in resisting the arrest.

8. **Arrest and Bail § 6; Assault and Battery § 9— excessive force in arrest—defense of arrestee by bystander—amount of force**

   A bystander is entitled to use only such force as is reasonably necessary to defend the arrestee from the excessive use of force.

9. **Assault and Battery § 11.3— assault on officer—duty officer was discharging—sufficiency of allegations**

   A magistrate's order charging an assault on a police officer in violation of G.S. 14-33(b)(4) is sufficient if it alleges only in general terms that the officer was discharging or attempting to discharge a duty of his office without further specifying the particular duty which the officer was discharging or attempting to discharge.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 4 August 1978 in Superior Court, WILKES County. Heard in the Court of Appeals 6 February 1979.

Defendant was arrested without a warrant and charged in a magistrate's order with assault on a police officer in violation of G.S. 14-33(b)(4). The arrest was precipitated by an incident occurring at approximately 12:30 a.m. on 2 October 1977, at the V.F.W. Hall in North Wilkesboro. The defendant was tried and convicted in the District Court and appealed from that conviction to the Superior Court.

The evidence presented at trial in the Superior Court is in substantial conflict. The State's version is as follows: Sergeant David Pendry was at the V.F.W. Hall on the evening of the incident in question. While he was standing on the front porch of the building, Kay Billings approached him and appeared to have blood running from her nose, and in the corners of her mouth. After a conversation with her, Officer Pendry and Officer Rodney Shumate proceeded to the back of the building and witnessed an argument between Darlene Billings, who was standing outside, and defendant Douglas Anderson who was sitting in the back seat of his car. The officer twice advised Darlene Billings to leave the area or he would arrest her. She replied that "no blue-bellied son-of-a-bitch [was] going to put her in jail." Officer Pendry then placed her under arrest for disorderly conduct. As he approached her, she attempted to strike him. The officer retaliated first by pushing her face to the ground and then by attempting to handcuff her. Shortly thereafter, defendant jumped on the officer's back and tried to strangle him. Officer Shumate tried to pull defendant away from Officer Pendry. Officer Kyle arrived at the

scene and helped restrain defendant. During the affray, Kyle struck defendant three times with his blackjack. Defendant broke loose and attacked Officer Pendry. Kyle and Pendry both restrained defendant and attempted to place handcuffs on him. Darlene Billings jumped on Officer Pendry's back, hit him five times, and helped defendant to break loose again. Defendant was ultimately handcuffed, but continued struggling and attempting to kick Officer Pendry in the "straddle". When he finally did so kick Pendry, the officer knocked him to the ground with his fist. The evidence showed that after the struggle a large portion of defendant's face was covered with blood, and he was taken to the hospital.

The defendant's version of the story follows: Kay Billings denied speaking to Officer Pendry or having blood on her face. As she was leaving the V.F.W. Hall, she followed Pendry and a crowd of people running to the back of the building. She testified that Darlene and defendant were not fighting, and that Darlene did not strike Pendry before he forced her to the ground. "She was screaming and fighting because he had her arm twisted behind her." At that point defendant got out of his car, walked up and put his hand on Pendry's shoulder, and stated, "Hey, man . . . that's my girl friend . . . she ain't done nothing." Pendry jumped up and swung at defendant. Pendry and Shumate then jumped on defendant, handcuffed him, and started beating him. Kay Billings testifed that she then went around the building to where Officer Kyle was parked. She said, "They're behind the building with Doug Anderson, . . . they're going to kill him, . . . please go back there." Officer Kyle got out of his car and "started in on Doug" while Pendry was beating defendant in the face with a radio or walkie-talkie. She tried to pull Pendry off, but she was knocked back across the car. She then testified, "Pendry was holding Doug by the shoulders, beating his head on the steps." Janice Conner, defendant's sister, corroborated some of Kay's testimony.

Darlene Billings testified that when the officer came up to her, defendant had just asked her if she wanted to ride with him or her mother. Pendry then approached her and told her to leave because she was causing trouble. She denied his accusation and turned away to ignore him. At that time, she testified, "Mr. Pendry cursed me and called me a fat bitch." He pushed her to the ground, sat on her, and twisted her arm behind her back. She was

charged and convicted of disorderly conduct as a result of the incident. Defendant testified that he had been beaten in the face and denied that Darlene was causing any trouble, or that they were having an argument.

From judgment entered on the verdict rendered in Superior Court sentencing defendant for a term of 15 to 18 months in the Wilkes County jail, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Douglas A. Johnston, for the State.*

*Joe O. Brewer and Paul W. Freeman for defendant appellant.*

MORRIS, Chief Judge.

Defendant's appeal raises issues of the right of an individual to come to the aid of himself or another in defending against an arrest being effected by the alleged excessive use of force. Defendant contends that based upon the evidence presented in this case, he is entitled to an instruction defining his right to self-defense and defense of another. We agree.

[1] It is elementary that the trial court, in its instructions to the jury, is required to declare and explain the law arising on the evidence. *See* G.S. 15A-1232. It, therefore, follows that the trial court is required to instruct the jury on the question of self-defense when that question is raised by the evidence, even in the absence of a request to do so. "Where there is evidence that defendant acted in self-defense, the court must charge on this aspect even though there is contradictory evidence by the State or discrepancies in defendant's evidence." *State v. Dooley*, 285 N.C. 158, 163, 203 S.E. 2d 815, 818 (1974); *State v. Watkins*, 283 N.C. 504, 196 S.E. 2d 750 (1973).

[2, 3] An officer of the law has the right to use such force as he may reasonably believe necessary in the proper discharge of his duties to effect an arrest. G.S. 15A-401(d)(1); *State v. Mensch*, 34 N.C. App. 572, 239 S.E. 2d 297 (1977), *cert. denied*, 294 N.C. 443, 241 S.E. 2d 845 (1978). Within reasonable limits, the officer is properly left with the discretion to determine the amount of force required under the circumstances as they appeared to him at the time of the arrest. *Todd v. Creech*, 23 N.C. App. 537, 209 S.E. 2d 293 (1974) (civil assault action against police officer); *State v. Fain*,

229 N.C. 644, 50 S.E. 2d 904 (1948). Nevertheless, when there is evidence tending to show the excessive use of force by a law enforcement officer, the trial court is required to instruct the jury that the force used against the law enforcement officer was justified or excused if the assault was limited to the use of reasonable force by defendant in defending himself from excessive force. *State v. Mensch, supra.*

[4] The right to defend oneself from the excessive use of force by a police officer must be carefully distinguished from the well-guarded right to resist an arrest which is unlawful. *See e.g., State v. Jefferies,* 17 N.C. App. 195, 193, S.E. 2d 388 (1972), *cert. denied,* 282 N.C. 673, 194 S.E. 2d 153 (1973) (applying G.S. 14-223, Resisting officers); *State v. Allen,* 14 N.C. App. 485, 188 S.E. 2d 568 (1972) (same). One resisting an illegal arrest is not resisting an officer within the discharge of his official duties. *State v. Sparrow,* 276 N.C. 499, 173 S.E. 2d 897 (1970); *State v. Bradley,* 32 N.C. App. 666, 233 S.E. 2d 603 (1977). However, the right to use force to defend oneself against the excessive use of force during an arrest may arise despite the lawfulness of the arrest, and the use of excessive force does not render the arrest illegal. *State v. Mensch, supra.*

[5] There is evidence in the record to suggest that defendant was merely protecting himself from an unprovoked attacked by Officers Pendry and Shumate. Defendant's version of this episode suggests that defendant merely put his hand on Officer Pendry's shoulder and stated, "Hey, man . . . that's my girl friend . . . she ain't done nothing." According to defendant's witnesses, the unprovoked attack followed. The credibility of the defendant's evidence is for the jury. There is sufficient evidence presented on the record to entitle defendant to an instruction on self-defense.

[6] Defendant further contends that he was entitled to a jury instruction with respect to the law excusing or justifying an assault which is in defense of another person. His position is taken in reliance upon the established rule in this State that an individual has a right to go to the defense of another if he has a well-grounded belief that a felonious assault is about to be committed upon the other person. *See State v. Fields,* 268 N.C. 456, 150 S.E. 2d 852 (1966); *State v. Graves,* 18 N.C. App. 177, 196 S.E. 2d 582 (1973), and cases cited *infra.*

We agree that there can be exceptional circumstances under which our law must recognize the right of a bystander to come to the aid of an arrestee who is the object of the excessive use of force. The perimeters of that right, however, must be carefully defined. That this is necessary is pointed out by the rather typical situation presented by this case. Officers are often placed in the position of having to effectuate an arrest in the midst of a hostile crowd. Very often such a group may be lacking in good judgment and, for several reasons, may be quite intolerant of the intrusion of police officers. The interference of one bystander, no matter how well-intentioned, could trigger deadly retaliation by police officers who are understandably and reasonably concerned for their personal safety. Intervention might also incite the passions of a hostile crowd to initiate violent action against outnumbered police officers. Such volatile situations compel a rule of law that carefully balances the need to protect officers as well as bystanders who may be injured as the result of an escalated confrontation between officers and a hostile crowd, and the desire to prevent serious and unprovoked injury to citizens from overzealous police officers. Because of the possibility of such situations and the possible escalation of violence, it is perhaps best to consider a rule of law that would discourage interference except under the most limited circumstance, and leave the victim arrestee to his remedy in a civil action for damages. *See generally State v. Westlund*, 13 Wash. App. 460, 536 P. 2d 20 (1975).

In recognizing the right of an arrestee to defend himself in the face of the excessive use of force by a law enforcement officer, our Courts followed the traditional case authority recognizing the right of an individual to defend himself from an unlawful assault. *See State v. Polk*, 29 N.C. App. 360, 224 S.E. 2d 272 (1976).

Defendant here urges that, in defining the right, if any, of a third person to interfere in an arrest, we follow the parallel of those cases recognizing the right under certain circumstances to come to the defense of another. It was said in *State v. Clark*, 134 N.C. 698, 47 S.E. 36 (1904), that where the defendant had a well-grounded belief or apprehension that one party was attempting to kill or do great bodily harm to a third person, he had a right to interfere to prevent the act. Similarly, the Court in *State v. Robinson*, 213 N.C. 273, 195 S.E. 924 (1938), held that where there

was sufficient evidence, defendant was entitled to an instruction that if he had a well-grounded belief that a felonious assault was about to be committed on another, he had the right, and it was his duty as a private citizen, to interfere to prevent the supposed crime. *See State v. Fields, supra; State v. Hornbuckle,* 265 N.C. 312, 144 S.E. 2d 12 (1965); *State v. Moses,* 17 N.C. App. 115, 193 S.E. 2d 288 (1972); *see also State v. Rutherford,* 8 N.C. 457 (1821). *Compare, State v. Maney,* 194 N.C. 34, 138 S.E. 441 (1927) (defense of family member); *State v. Johnson,* 75 N.C. 174 (1876) (same).

It is our opinion that the privilege to intervene in the context of a supposed felonious assault upon an arrestee by a person known or reasonably believed to be a police officer must be more limited than the traditionally recognized right to come to the defense of a third party. *Compare, People v. Young,* 11 N.Y. 2d 274, 183 N.E. 2d 319 (1962) (officers attempting arrest not identified as police officers). The more limited right is based on the proposition that an officer is presumed to be acting lawfully while in the exercise of his official duties. Therefore, one who comes to the aid of an arrestee must do so at his own peril and should be excused only when the individual would himself be justified in defending himself from the conduct of the arresting officers. This is apparently the majority rule with respect to the defense of others in the non-arrest as well as the arrest context. *See People v. Young,* supra; 6A C.J.S., Assault and Battery § 93; *see generally* Anno., Right to Resist Excessive Force Used in Accomplishing Lawful Arrest, 77 A.L.R. 3d 281 (1977). We reject the rule that would allow a bystander coming to the defense of an arrestee to rely upon the reasonable belief that excessive force is being used. We do so for reasons discussed above and for those reasons which prompted the California courts to reject that rule. *People v. Booher,* 18 Cal. App. 3d 331, 95 Cal. Rptr. 857 (1971). We quote:

> "[I]t is argued that the rule of reasonable appearance should not be applied to cases involving interference with arrest by third parties since the impulse of self-preservation is not present and that lack of knowledge and understanding of the facts and law by such person would unduly interfere with the vital public interest surrounding law enforcement. We agree that public policy discourages forceful intervention in arrests by third party bystanders because, among other things, the probabilities are that such intervention would only exacer-

bate the situation." 18 Cal. App. 3d at 335, 95 Cal. Rptr. at 859.

The New York Court in *People v. Young, supra,* adopted a similar rule to apply regardless of whether the intervenor knew or should have known that police officers were involved. Similarly, in the recent case of *State v. Westlund, supra,* the Court held that a bystander acts at his own peril, and if it is subsequently determined that the arrestee was not justified in resisting the arrest, the bystander would similarly not be justified in coming to his aid.

**[7, 8]** We hold simply that the evidence presented by the defense presents facts which, if believed, might justify defendant in coming to the defense of the arrestee. The reasonableness of the officer's conduct in effectuating the arrest of Darlene Billings is a question for the jury, and defendant is entitled to an instruction that defendant was justified in interfering with the arrest if the arrestee was herself justified in resisting the arrest. *See generally* Anno., 77 A.L.R. 3d 281 (1977). Similarly, the bystander is entitled to use only such force as is reasonably necessary to defend the arrestee from the excessive use of force. *Cf. State v. Mensch,* supra; *State v. Polk,* supra.

**[9]** Defendant cites *State v. Mink,* 18 N.C. App. 346, 196 S.E. 2d 552 (1973), in support of his contention that the magistrate's order charging defendant with violating G.S. 14-33(b)(4) was defective. He argues that he is entitled to have the judgment arrested for failure of the order to specifically allege the duty of office which the public officer was discharging or attempting to discharge. *Mink* has been specifically overruled by this Court in *State v. Waller,* 37 N.C. App. 133, 245 S.E. 2d 808 (1978). It is now recognized that under G.S. 14-34(b)(4) "the particular duty the officer was performing when assaulted is not of primary importance, it only being essential that the officer was 'performing or attempting to perform *any* duty of his office.' *State v. Kirby, supra,* 15 N.C. App. at 488, 190 S.E. 2d at 325." *State v. Waller,* 37 N.C. App. at 136, 245 S.E. 2d at 810-811.

We do not discuss defendant's remaining assignments of error. The alleged errors to which they are directed are not likely to recur upon retrial of this matter. For the failure of the trial

court to instruct the jury with respect to defendant's right of self-defense and defense of another, he must be afforded a

New trial.

Judges MARTIN (Harry C.) and CARLTON concur.