An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1071

NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

STATE OF NORTH CAROLINA

v.

Pender County
No. 11 CRS 52835, 12 CRS 542

ROBERT LEVITICUS MCKOY

Appeal by defendant from judgments entered 2 May 2013 by Judge Arnold O. Jones, II, in Pender County Superior Court. Heard in the Court of Appeals 18 February 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Jill F. Cramer, for the State.*

> *The Law Office of Bruce T. Cunningham, Jr., by Bruce T. Cunningham, Jr., for Defendant.*

ERVIN, Judge.

Defendant Robert Leviticus McKoy appeals from a judgment sentencing him to a term of 89 to 119 months imprisonment based upon his convictions for felonious speeding to elude arrest, reckless driving, possession of drug paraphernalia, driving while license revoked, and having attained the status of an habitual felon and from a judgment finding him responsible for driving left of center without requiring him to pay additional court costs. On appeal, Defendant contends (1) that the trial

court erred by sentencing him as an habitual felon despite the fact that he was neither found guilty of nor pled guilty to having attained habitual felon status; allowing Defendant to be convicted of felonious speeding to elude arrest based upon the use of reckless driving and driving while license revoked as aggravating circumstances and then separately sentencing him based upon his convictions for reckless driving and driving while license revoked; denying his motions to dismiss the felonious speeding to elude arrest charge for insufficiency of the evidence; allowing the jury to consider whether Defendant drove more than fifteen miles per hour in excess of the speed limit in determining whether he was guilty of felonious speeding to elude arrest; failing to describe the manner in which Defendant allegedly drove in a careless and reckless manner in the course of instructing the jury; and allowing the jury to consider the issue of Defendant's guilt of reckless driving and (2) that he received constitutionally deficient representation from his trial counsel. After careful consideration of Defendant's challenges to the trial court's judgments in light of the record and the applicable law, we conclude that the judgment that the trial court entered based upon Defendant's convictions for felonious speeding to elude arrest, reckless driving, possession of drug paraphernalia, driving while license

revoked, and having attained the status of an habitual felon should be vacated and that this case should be remanded to the Pender County Superior Court for resentencing.

## I. Factual Background

### A. Substantive Facts

#### 1. State's Evidence

Detective Lazaro Ramos worked as a narcotics detective for the Pender County Sheriff's Office. On 30 December 2011, Detective Ramos was traveling north on Highway 117 in an unmarked Ford Explorer after having gotten off of work. At approximately 1:46 p.m., Detective Ramos drove past Defendant, who was entering Highway 117 from Interstate 40 while driving a red Jeep Cherokee. Detective Ramos noticed Defendant when Defendant's vehicle, which he recognized as the result of having viewed a photograph that had been given to him by Sergeant Lisa Fields of the Burgaw Police Department, began slowing down.[1] As Detective Ramos continued to observe Defendant, he noticed that Defendant was behaving evasively and began wondering why Defendant was trying to avoid him.

As Detective Ramos and Defendant both slowed down, the two drivers were able to see each other. After Defendant exited

---

[1]Sergeant Fields had shown the vehicle's photograph to Detective Ramos, who had responsibility for drug-related investigations, because she was looking into Defendant's activities.

Highway 117 to the right and approached the stop sign at the end of the exit ramp, he appeared to be about to make a right turn. While Detective Ramos passed over the overpass and continued on the highway, Defendant continued to creep toward the stop sign. Upon reaching the stop sign, Defendant made a sharp left turn rather than turning right as Detective Ramos expected.

After making this observation and crossing the overpass, Detective Ramos turned around. Once he had turned around, Detective Ramos activated his blue lights and siren, informed the 911 dispatch center that he was trying to catch up with Defendant's vehicle, and increased his speed to 100 miles per hour in order to accomplish that goal. Although Detective Ramos had difficulty catching up with Defendant, he continued to pursue him.[2]

After pursuing Defendant for some distance, Detective Ramos regained visual contact with Defendant. At that point, Detective Ramos observed Defendant "fishtailing" and watched him cross over the double yellow line as he attempted to pass other vehicles in a blind curve. As he came closer to Defendant, Detective Ramos ran the tags on the vehicle that Defendant was

---

[2]At the time that the chase began, Detective Ramos knew Defendant as Rob Base. When Sergeant Fields heard Detective Ramos radio that he was attempting to stop a red Jeep driven by a Rob Base, she provided him with Defendant's real name.

driving and discovered that it was registered to an individual named Mack Douglas Smith.[3]

After a pursuit of less than a mile, Defendant entered a residential area in which one of his sisters lived. As he did so, he cut through the yard of a residence in order to avoid colliding with a vehicle that was leaving the subdivision. Upon entering a cul de sac, Defendant drove up a driveway and through back yards associated with various homes. Eventually, Defendant collided with a tree and fled on foot. A search of the area for Defendant proved unsuccessful. A search of Defendant's vehicle resulted in the seizure of cigar papers and a digital scale, items that Detective Ramos believed to be drug paraphernalia. Defendant subsequently surrendered to investigating officers.

Allen Monteith, a driver's license examiner with the North Carolina Division of Motor Vehicles, testified that Defendant's license was suspended at the time of the incident. In addition, Detective Ramos testified that Defendant's name had been written on the back of the registration card associated with the Jeep Cherokee. Although Detective Ramos did not have specific knowledge of the reason that Defendant's name had been written

---

[3]Mr. Smith had purchased the vehicle for Defendant using money that Defendant had provided to him for that purpose in recognition of the fact that Defendant did not have a license. The insurance applicable to Defendant's vehicle had been procured in the name of his sister.

on the back of the vehicle's registration card, he testified that the name of an individual who is stopped for driving without a license or is unable to present valid identification information is frequently written on the registration card associated with the vehicle that the individual has been driving.

## 2. Defense Evidence

Jonnisia McKoy, Defendant's older sister, testified that Defendant, who was accompanied by his girlfriend, had been visiting her in Raleigh on 30 December 2011. Due to their family tradition of spending New Year's Eve in their home church, Ms. McKoy and Defendant left Raleigh to return to Pender County early in the evening of 30 December 2011. In support of her testimony, receipts evidencing certain purchases that Defendant had made in Raleigh on 29 December 2011 were admitted into evidence.

## B. Procedural Facts

On 30 December 2011, a warrant for arrest charging Defendant with felonious speeding to elude arrest and reckless driving was issued. On 27 February 2012, the Pender County grand jury returned bills of indictment charging Defendant with felonious speeding to elude arrest, reckless driving, speeding 100 miles per hour in a 55 mile per hour zone, driving left of

center, possession of drug paraphernalia, driving while license revoked, and resisting, delaying, and obstructing a public officer. On 26 March 2012, the Pender County grand jury returned a bill of indictment alleging that Defendant had attained the status of an habitual felon.

The charges against Defendant came on for trial before Judge Paul L. Jones and a jury at the 25 June 2012 criminal session of the Pender County Superior Court. During the course of Defendant's initial trial, Judge Jones dismissed the reckless driving charge due to deficiencies in the relevant indictment. Defendant's first trial ended in a mistrial after the jury failed to reach a unanimous verdict.

The charges against Defendant came on for trial a second time before the trial court and a jury at the 30 April 2013 criminal session of the Pender County Superior Court. At the conclusion of the State's evidence, the trial court allowed Defendant's motion to dismiss the resisting, delaying, and obstructing a public officer charge. On 2 May 2013, the jury returned a verdict finding Defendant guilty of or responsible for felonious speeding to elude arrest, reckless driving, driving left of center, possession of drug paraphernalia, and driving while license revoked and finding Defendant not guilty of speeding 100 miles per hour in a 55 mile per hour zone. At

the conclusion of the ensuing sentencing hearing, the trial court consolidated Defendant's convictions for felonious fleeing to elude arrest, reckless driving, possession of drug paraphernalia, and driving while license revoked for judgment; concluded that Defendant should be sentenced as an habitual felon; and entered a judgment ordering that Defendant be imprisoned for a term of 89 to 119 months. In addition, the trial court ordered that Defendant not be assessed any "additional court costs" in connection with his conviction for driving left of center. Defendant noted an appeal from the trial court's judgments.

## II. Legal Analysis

### A. Speeding to Elude Arrest

In his brief, Defendant contends that the trial court erred by denying his motion to dismiss the felonious speeding to elude arrest charge. More specifically, Defendant contends that the record, when viewed in the light most favorable to the State, did not contain sufficient evidence to support a determination that Detective Ramos was lawfully performing an official duty at the time he attempted to stop Defendant. Defendant's contention has merit.[4]

---

[4]In its brief, the State contends that Defendant failed to properly preserve his challenge to the sufficiency of the evidence to support his conviction for felonious speeding to

## 1. Standard of Review

In considering whether to grant a motion to dismiss for insufficiency of the evidence, the trial court must determine "'whether there is substantial evidence (1) of each essential element of the offense charged and (2) that [the] defendant is the perpetrator of the offense.'" *State v. Bradshaw*, 366 N.C. 90, 93, 728 S.E.2d 345, 347 (2012) (quoting *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In conducting the required analysis, the "trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor." *Id.* at 92, 728 S.E.2d at 347 (internal quotation marks omitted) (quoting *State v. Miller*, 363 N.C. 96, 98, 678 S.E.2d 592, 594 (2009)). "All

---

elude arrest for purposes of appellate review on the grounds that Defendant's trial counsel failed to address the sufficiency of the evidence to support a determination that Detective Ramos was acting lawfully at the time that he began to pursue Defendant when she moved to dismiss the speeding to elude arrest charge. However, given that the record reflects that Defendant moved to dismiss the felonious speeding to elude arrest charge "based on the evidence [considered] in the light most favorable to the State" at the conclusion of the State's evidence and "submit[ted] to the Court the same arguments [] used before for each charge" when he moved to dismiss the felonious speeding to elude arrest charge at the conclusion of all of the evidence, we conclude that Defendant properly preserved his challenge to the speeding to elude arrest charge for purposes of appellate review.

evidence, competent or incompetent, must be considered," with "[a]ny contradictions or conflicts in the evidence [to be] resolved in favor of the State, and [with any] evidence unfavorable to the State" eliminated from consideration. *Id.* at 93, 728 S.E.2d at 347. We review a challenge to the denial of a motion to dismiss for insufficiency of the evidence using a *de novo* standard of review. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

## 2. Sufficiency of the Evidence

According to N.C. Gen. Stat. § 20-141.5(a), it is "unlawful for any person to operate a motor vehicle on a street, highway, or public vehicular area while fleeing or attempting to elude a law enforcement officer who is in the lawful performance of his duties." Although a violation of N.C. Gen. Stat. § 20-141.5 is ordinarily a Class 1 misdemeanor, the commission of that offense becomes a Class H felony if the defendant, in the course of his or her flight, speeds "in excess of 15 miles per hour over the legal speed limit," N.C. Gen. Stat. § 20-141.5(b)(1); "[r]eckless[ly] driv[es] as proscribed by [N.C. Gen. Stat. §] 20-140," § 20-141.5(b)(3); or "[d]riv[es] when [his or her] driv[er']s license is revoked." N.C. Gen. Stat. § 20-141.5(b)(5). As a result, an individual's guilt for purposes of N.C. Gen. Stat. § 20-141.5 hinges upon the extent to which the

defendant attempts to flee from a law enforcement officer who is attempting to lawfully perform his or her official duties. *State v. Sinclair*, 191 N.C. App. 485, 489-90, 663 S.E.2d 886, 870 (2008) (citing *State v. Anderson*, 40 N.C. App. 318, 322, 253 S.E.2d 48, 51 (1979)) (stating that, in the event that the detention of the defendant was "unlawful, there was insufficient evidence that [the officer] was discharging or attempting to discharge a duty of his office" for the purpose of determining the defendant's guilt of resisting, delaying, or obstructing a public officer).

"A police officer may effect a brief investigatory seizure of an individual where the officer has reasonable, articulable suspicion that a crime may be underway." *State v. Barnard*, 184 N.C. App. 25, 29, 645 S.E.2d 780, 783 (2007) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1879-80, 20 L. Ed. 2d 889, 906 (1968)), *aff'd*, 362 N.C. 244, 658 S.E.2d 643, *cert. denied*, 555 U.S. 914, 129 S. Ct. 264, 172 L. Ed. 2d 198 (2008). The required reasonable articulable suspicion must "'be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training.'" *Id.* (quoting *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994)). A reviewing court "must consider the

totality of the circumstances in determining whether the officer possessed a reasonable and articulable suspicion to make an investigatory stop." *Id.*

According to the transcript of Defendant's second trial, Detective Ramos saw Defendant, with whom he was familiar as the result of previous work-related activities and whom he knew to be under investigation by other law enforcement officers, as he drove north on Highway 117. After observing Defendant exit upon catching sight of him, Detective Ramos testified that he had to drive further north on Highway 117 and cross an overpass before he turned around, after which, as he headed south on Highway 117, he sped up to 100 mph, turned on his siren and blue lights, contacted the dispatcher, and decided to stop Defendant. As a result of the fact that Defendant exited Highway 117 upon sighting Detective Ramos and the fact that Defendant made an unexpected left turn after apparently intending to turn right, Detective Ramos appears to have concluded that Defendant was engaging in some type of criminal activity. We are, however, unable to see how, given these facts, Detective Ramos had an articulable reasonable suspicion sufficient to justify his decision to stop Defendant.

In an attempt to persuade us to reach a contrary conclusion, the State argues that Detective Ramos had the

reasonable articulable suspicion necessary to justify an investigative detention of Defendant because (1) Defendant was under investigation for drug-related activities, (2) Defendant initiated an unprovoked flight after seeing Detective Ramos, and (3) Defendant drove recklessly "during the chase." As an initial matter, we note that the fact that Defendant drove recklessly once the chase began has no bearing upon the lawfulness of Detective Ramos' decision to pursue Defendant in the first place given that the required "reasonable suspicion must arise from the officer's knowledge prior to the time of the stop." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000). Although Detective Ramos testified that Defendant "punche[d] it" when he turned left after leaving Highway 117, he never described any illegality in the manner in which Defendant made that left turn. Simply put, the fact that Defendant attempted to avoid Detective Ramos without engaging in any independently unlawful conduct does not provide any justification for a decision to conduct an investigative detention given that an individual has a right, if he or she chooses to exercise it, to avoid contact with law enforcement officers. *State v. Canty*, __ N.C. App. , __, 736 S.E.2d 532, 537 (2012) (stating that "[n]ervousness, failure to make eye contact with law enforcement, and a relatively small reduction

in speed is 'conduct falling within the broad range of what can be described as normal driving behavior'" (quoting *State v. Peele*, 196 N.C. App. 668, 674, 675 S.E.2d 682, 687, *disc. review denied*, 363 N.C. 587, 683 S.E.2d 384 (2009))), *disc. review denied*, 366 N.C. 578, 739 S.E.2d 850 (2013); *Sinclair*, 191 N.C. App. at 489, 663 S.E.2d at 870 (stating that, "[i]f the encounter was consensual, [the defendant] was at liberty 'to disregard the police and go about his business'" (quoting *Florida v. Bostic*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389, 398 (1991))). Finally, the mere fact that Defendant was under investigation by the local law enforcement community does not tend to show that Detective Ramos had the reasonable articulable suspicion necessary to justify an investigative detention given that the record contains no evidence tending to show what Defendant was alleged to have done or the strength of the evidence tending to show that Defendant was involved in unlawful conduct. Thus, none of the justifications for Detective Ramos' decision to conduct an investigative detention of Defendant offered in the State's brief have any merit.

The ultimate deficiency in Detective Ramos' decision to detain Defendant was the absence of any indication that any sort of specific criminal activity was "underway." *See Barnard*, 184

N.C. App. at 29, 645 S.E.2d at 783.  In order for an officer to conduct a valid investigative detention, there must be some nexus between the suspicious behavior in which the defendant has engaged and the crime for which the officer seeks to detain the defendant.  *See Canty*, __ N.C. App. at __, 736 S.E.2d at 537 (stating that, although slowed speed "tends to be a factor in reasonable suspicion for impaired driving," "[i]mpaired driving . . . was not the offense for which the officers testified that they pulled over [the defendant]").  A careful review of the record developed in the trial court demonstrates that Detective Ramos never provided any explanation for his decision to detain Defendant and none appears to us from our view of the transcript of Defendant's second trial.  As a result, given that the record provides no justification for  Detective Ramos' decision to pursue and initiate an investigative detention of Defendant, we conclude that the trial court erred by failing to allow Defendant's motion to dismiss the speeding to elude arrest charge at the conclusion of all of the evidence and that the trial court's judgment sentencing Defendant based upon his conviction for felonious speeding to elude arrest should be vacated.[5]

---

[5]Our decision that the trial court should have allowed Defendant's motion to dismiss the speeding to elude arrest charge for insufficiency of the evidence renders many of

## B. Reckless Driving Conviction

In addition, Defendant contends that the trial court erred by allowing the jury to convict him for reckless driving and by entering judgment based upon his reckless driving conviction given that the trial court lacked jurisdiction to proceed against him on the basis of that reckless driving charge. In support of this assertion, Defendant contends that the challenged trial court decisions overlook the fact that the reckless driving charge had been dismissed during his first trial, so that there was no reckless driving charge pending against him when this case was called for trial at the 30 April

Defendant's remaining arguments moot. For example, Defendant's contention that the trial court's decision to enter judgment against him on the basis of his separate convictions for driving while license revoked and reckless driving despite the fact that these same offenses were used to enhance the speeding to elude arrest charge from a misdemeanor to a felony hinges upon a decision to uphold his felonious speeding to elude arrest conviction. Similarly, Defendant's contention that the trial court erred by allowing the jury to find that he was guilty of felonious speeding to elude arrest on the grounds that he drove 100 miles per hour in a 55 mile per hour zone is rendered moot by our decision to invalidate his felonious speeding to elude arrest conviction and by the jury's decision to acquit him of the speeding charge that had been lodged against him. Finally, although our decision that the record did not contain sufficient evidence to support Defendant's conviction for felonious speeding to elude arrest obviates the necessity for us to address Defendant's challenge to the trial court's decision to sentence him as an habitual felon, we do note that the trial court erred by accepting Defendant's admission to having attained habitual felon status without complying with the procedures for accepting a guilty plea set out in N.C. Gen. Stat. § 15A-1022(a).

2013 criminal session of the Pender County Superior Court. Once again, we conclude that Defendant's contention has merit.

"Art. I, sec. 12 of our Constitution requires a bill of indictment, unless waived, for all criminal actions originating in the Superior Court," with "a valid bill [being] necessary to vest the court with authority to determine the question of guilt or innocence." *State v. Bissette*, 250 N.C. 514, 515, 108 S.E.2d 858, 859 (1959). As a result of the fact that the record clearly reflects that the indictment purporting to charge Defendant with reckless driving was dismissed during the course of Defendant's first trial and that the State never obtained another indictment charging Defendant with reckless driving, there was no valid indictment upon which Defendant could have been tried for reckless driving at the 30 April 2013 criminal session of the Pender County Superior Court. As a result, the trial court erred by allowing Defendant to be tried for and convicted of reckless driving at his second trial.

In seeking to persuade us to reach a different result with respect to this issue, the State argues that, to the extent that Defendant is attempting to argue that his reckless driving conviction should be invalidated on double jeopardy grounds, Defendant is not entitled to rely on such a contention because he failed to raise it in the court below. In the alternative,

the State contends that Defendant's conviction was valid because the record contains a bill of indictment purporting to charge Defendant with reckless driving. However, we do not find either of these arguments persuasive.

As an initial matter, we do not understand Defendant's argument to rest on double jeopardy considerations. Instead, Defendant clearly contends that the trial court lacked jurisdiction to try him for reckless driving in light of the fact that the record is devoid of a viable indictment charging him with having committed that offense. According to well-established principles of North Carolina law, "the issue of a court's jurisdiction over a matter may be raised at any time, even for the first time on appeal or by a court *sua sponte*." *State v. Webber*, 190 N.C. App. 649, 650, 660 S.E.2d 621, 622 (2008). Finally, the mere presence of an indictment containing the dismissed charge in the record does not suffice to establish the trial court's jurisdiction over the dismissed charge since the continued presence of the indictment, which charges offenses that have not been dismissed in addition to the charge that has been dismissed, in the record does not in any way undercut the earlier dismissal decision or reinstate the dismissed charge. *See, e.g.*, *State v. Austin*, 31 N.C. App. 20, 26-27, 228 S.E.2d 507, 512 (1976) (stating that, as "[d]efendant Thorne points

out, and the State concedes, . . . the indictment against him in Case No. 75CR3585, which was returned as a true bill on 15 April 1975, was dismissed by the trial court on motion of defendant prior to arraignment," so that "the judgment entered in that case must be vacated"). As a result, Defendant's conviction for reckless driving and judgment entered against Defendant based upon that conviction must be vacated.[6]

## III. Conclusion

Thus, for the reasons stated above, we conclude that the trial court erred by denying Defendant's motion to dismiss the speeding to elude arrest charge that had been lodged against him for insufficiency of the evidence, a determination that undermines the validity of Defendant's conviction for having attained the status of an habitual felon, and by allowing the jury to convict Defendant of reckless driving and by entering judgment against Defendant based upon his conviction for reckless driving.[7] As a result, given that Defendant has not

---

[6]In light of our decision to overturn the judgment stemming from Defendant's reckless driving conviction for jurisdictional reasons, we need not address Defendant's challenge to the validity of the trial court's instructions with respect to the issue of Defendant's guilt of reckless driving.

[7]As we noted at the beginning of this opinion, Defendant also contended in his brief that he received constitutionally deficient representation from his trial counsel, with this contention predicated on the manner in which his trial counsel responded to the introduction of various certificates showing

challenged the validity of his convictions for driving while license revoked or possession of drug paraphernalia or the trial court's judgment based upon the jury's decision to find him responsible for driving left of center, the trial court's judgment based upon his convictions for felonious speeding to

---

that Detective Ramos had completed various courses of instruction, the manner in which his trial counsel cross-examined Mr. Monteith concerning Defendant's prior driving history, his trial counsel's failure to object to the trial court's instructions with respect to the reckless driving charge, and his trial counsel's failure to make an adequate sentencing presentation. As a result of our decision to vacate Defendant's speeding to elude arrest and reckless driving convictions and to remand this case to the Pender County Superior Court for resentencing, Defendant's contentions relating to his trial counsel's handling of the certificates awarded to Detective Ramos, his trial counsel's failure to object to the trial court's reckless driving instructions, and his trial counsel's alleged failure to make an effective sentencing presentation have been rendered moot. Although we do not believe that our decision has mooted Defendant's challenge to the manner in which his trial counsel cross-examined Mr. Monteith, we do not believe that there is any likelihood that Defendant would have been acquitted of driving while license revoked and possession of drug paraphernalia and found not responsible for driving left of center had the jury not heard the additional evidence concerning Defendant's prior driving history elicited during the cross-examination of Mr. Monteith. *State v. Blakeney*, 352 N.C. 287, 307-08, 531 S.E.2d 799, 814-15 (2000) (stating that a convicted criminal defendant is not entitled to relief on ineffective assistance of counsel grounds in the absence of a showing "that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error" (citing *Strickland v. Washington*, 466 U.S. 668, 691-96, 104 S. Ct. 2052, 2066-69, 80 L. Ed. 2d 674, 696-99 (1984))), *cert. denied*, 531 U.S. 1117, 121 S. Ct. 868, 148 L. E. 2d 780 (2001). As a result, Defendant is not entitled to any relief from his remaining convictions based upon the ineffective assistance of counsel claim asserted in his brief.

elude arrest, reckless driving, driving while license revoked, and possession of drug paraphernalia should be, and hereby is, vacated and this case should be, and hereby is, remanded to the Pender County Superior Court for resentencing and the entry of a new judgment based upon Defendant's convictions for driving while license revoked and possession of drug paraphernalia.

VACATED IN PART, NO ERROR IN PART, AND REMANDED FOR RESENTENCING.

Judges MCGEE and STEELMAN concur.

Report per Rule 30(e).