BRYANT, Judge.
Where defendant fails to establish any fundamental error had a probable impact on the jury verdict, defendant cannot show plain error where the trial court did not instruct the jury on self-defense. Also, where defendant fails to establish Harbison error as a basis for ineffective assistance of counsel, we deny her motion for appropriate relief.
On 5 January 2015, defendant Falecia Ann Richmo McCaster was indicted on charges of assault on a government official/employee inflicting physical injury and disorderly conduct in a public building. The State elected not to proceed on the charge of disorderly conduct and dismissed that charge. The charges of assault on a government official came on for trial during the 31 August 2015 criminal session of Alamance County Superior Court, the Honorable R. Allen Baddour Jr., Judge presiding.
At trial, the State's evidence tended to show that in the morning on 27 August 2014, defendant met Alamance County Clerk of Court David Barber in the Office of the Clerk of Court in regard to an estate matter. Barber testified that defendant asked him to reopen her deceased husband's estate, refund money to her, and pay bills for her. Barber informed defendant that all of the estate's funds had been distributed and that the estate had been closed. Barber testified that defendant began yelling and screaming at him. "She wanted her money. She wanted us to open the estate and accusing us of, you know, cheating her."
Q. Okay. And how close was she to you?
A. I would say about a foot away.
Q. Okay. So she was in your personal space?
A. Yes.
Q. And were you concerned?
....
A. Yes.
On that morning, Captain Paul Fine with the Alamance County Sheriff's Department was in uniform, working as a courtroom bailiff when he received notice that there was a problem in the Clerk's Office and help was needed immediately. Captain Fine heard "a lot of hollering and cursing coming from the estates division in the clerk's office," and when he entered the clerk's office, observed defendant "probably a foot away from [Barber's] face cursing and screaming at him." When Captain Fine walked up behind defendant, she turned to face him. Being directed to leave, she responded, "I ain't going no damn where." When Captain Fine took her by her upper arm, defendant struck and scratched his face. Captain Fine described defendant's conduct as "[w]ell, she was like somebody deranged. I mean, she just went off." A deputy clerk later testified that Captain Fine was bleeding from his ear, nose, and near the hairline of his forehead. Captain Fine pepper sprayed defendant and then subdued her on the floor.
Defendant testified that she went to the courthouse to reopen her husband's estate. She believed that Barber had mishandled the estate funds. "[I]t's about $300,000 missing. Plus, no taxes and bills had been paid." Contrary to the State's witnesses, defendant testified that when she requested that Barber open the estate, his first response was "You're going to die and go to hell today or jail one." Defendant testified that when Captain Fine arrived, she put her hands behind her back and bowed her head, preparing to be arrested. "I figured, if-if I go to jail, maybe they'll investigate." She testified that Captain Fine immediately sprayed her eyes and said, "You're going to die, hahahaha; you going to die and go to hell today; hahahahaha, you're going to die and go to hell." Defendant acknowledged hitting Captain Fine: "I hit him to get the spray out of my eyes."
Following the court's instruction, to which no objection was raised, the jury returned a guilty verdict against defendant on the charge of assault on a law enforcement officer inflicting serious injury. The trial court entered judgment in accordance with the jury verdict and sentenced defendant to an active term of five to fifteen months. The court then suspended the active term and placed defendant on supervised probation for twelve months. Defendant appeals.
_________________________
Defendant argues that because she testified she struck Captain Fine only after he pepper sprayed her in order to stop the spray, the trial court committed plain error in failing to instruct the jury on self-defense. We disagree.
"When [a] defendant fail[s] to object to the instructions at trial but claims on appeal of improper jury instructions, the instructions are reviewed for plain error." State v. Garris , 191 N.C. App. 276, 287, 663 S.E.2d 340, 349 (2008) (citation omitted).
For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations omitted).
The right of self-defense is available only to a person who is without fault, and if a person voluntarily, that is, aggressively and willingly, without legal provocation or excuse, enters into a fight, he cannot invoke the doctrine of self-defense unless he first abandons the fight and withdraws from it, and gives notice to his adversary that he has done so.
State v. Watkins , 283 N.C. 504, 511, 196 S.E.2d 750, 755 (1973) (citation omitted). "[W]here [the] defendant's evidence is sufficient to warrant a charge on self-defense, the instruction must be given even though the State's evidence is contradictory. In resolving this question the facts are to be interpreted in the light most favorable to defendant." Id. at 509, 196 S.E.2d at 754 (citations omitted). In support of her argument, defendant points to State v. Anderson , 40 N.C. App. 318, 253 S.E.2d 48 (1979).
In Anderson , the defendant's conviction for assault on an officer was overturned. At trial, contradictory evidence was presented as to the events which led to the defendant's arrest. According to the State's evidence, law enforcement officers were attacked by defendant and a woman while attempting to break up the couple's argument. Id. at 319-20, 253 S.E.2d at 49. The defendant and his witnesses testified there was no argument, the woman did not strike the officer, and the defendant only placed his hand on the officer's shoulder and said "Hey, man ... that's my girl friend [sic] ... she ain't done nothing." Id. at 320, 253 S.E.2d at 50 (alteration in original). On appeal, our Court determined "[t]here [wa]s evidence in the record to suggest that [the] defendant was merely protecting himself from an unprovoked attack by [law enforcement officers]" and as a result held that "[t]here [wa]s sufficient evidence presented on the record to entitle [the] defendant to an instruction on self-defense." Id. at 322, 253 S.E.2d at 51.
Here, the State presented testimony from eye witnesses Captain Fine, Clerk of Court Barber, Deputy Clerk Bertram Heathcote, and Deputy Clerk Hanna Evans. Barber testified that Captain Fine directed defendant to leave the Courthouse, that in response, defendant struck the captain, and Captain Fine then sprayed defendant's face and subdued her. Captain Fine also testified that he pepper sprayed defendant and subdued her only after she struck him.
A. ... I told her she needed to settle down. And, at that point, she started cursing me and, then, turned back around to Barber. And I told her she was going to have to leave. And, at that time, I believe she said "I ain't going no damn where." And I said, "Yes, you are." I said, "If you don't leave, you're going to jail." Well, she kept on so, finally, I took her by her upper-the arm going to try to lead her out of the office, and that's when she turned and hit me in the face.
Q. Okay.
A. And knocked my glasses off and continued striking me in the face and scratching me. And so, finally, I physically got a hold of her going to try to move her out of the office and she kept on. So, at that time, I got her far enough away from me where I could get my pepper spray out and sprayed her and took her down to the floor and got her handcuffed.
Testimony by Deputy Clerks Heathcote and Evans was consistent with the testimony of Barber and Captain Fine.
On this evidence, defendant was not protecting herself from an unprovoked attack. Cf. id. Therefore, she is not entitled to a self-defense instruction as she voluntarily, aggressively and willingly, and without legal provocation or excuse, started the fight. See Watkins , 283 N.C. at 511, 196 S.E.2d at 755 ("The right of self-defense is available only to a person who is without fault...." (citation omitted)).
Defendant presented only herself as a witness.
A. ... So I said, "Mr. Barber," and, then, he said it again, "You're going to die and go to hell today," so I-"or jail." So, I puts my hands behind my back and bow my head because I figured, if-if I go to jail, maybe they'll investigate.
So, when I had my hands behind my back and I-and Mr. Barber called his deputy, I looks up at the deputy, with my hands still behind my back, no handcuffs on my hands; I looks at the deputy and I says-he says, "You're going-you're going to die and go to hell or jail one." I-
Q. Who said that?
A. Mr. Fine. I looks at him, with my hands still behind my back, I'm thinking he's going for his handcuffs. No, he didn't. Then, he went for the gun and I said, "I know he ain't going to shoot me." And, then, he went for his-I said, "Well, he'll get the handcuffs." Instead, he brings out this little can, which I had never seen before; didn't know what they were getting.
He brings it and the tip of that little can has a tip. It was going across my eyes. He was spraying going, "You're going to die, hahahaha; you going to die and go to hell today; hahahahaha, you're going to die and go to hell."
I said, "No, I'm not dying and go to hell." Yes, I did hit him. I hit him to get the spray out of my eyes. I was screaming. I was hollering, "Please, help me. Please, help me; somebody help me."
As a witness's credibility is an issue for the jury, even assuming arguendo that defendant's testimony entitles her to an instruction on self-defense, defendant still cannot establish plain error. See Anderson , 40 N.C. App. at 322, 253 S.E.2d at 51. Given the overwhelming nature of the evidence, including the injury to Captain Fine and witness testimony supporting the altercation, defendant has failed to establish that the lack of an instruction on self-defense had a probable impact on the jury's verdict finding her guilty of assault on a law enforcement officer, inflicting physical injury. Therefore, defendant has failed to establish plain error. See Lawrence , 365 N.C. at 518, 723 S.E.2d at 334. Accordingly, her argument is overruled.
MAR
We also address defendant's motion for appropriate relief (MAR), contending that she received ineffective assistance of counsel where her attorney abandoned her claim of self-defense and instead argued for jury nullification. For the reasons which follow, we deny defendant's MAR.
Defendant asserts that defense counsel did not have consent to abandon her self-defense claim and substitute an alternative theory of mental instability. Defendant claims defense counsel's actions were tantamount to Harbison error, admitting defendant's guilt absent defendant's consent-a per se violation of defendant's Sixth Amendment right to counsel.
In State v. Harbison , 315 N.C. 175, 337 S.E.2d 504 (1985), the defense counsel attempted to persuade the jury that the defendant was guilty of a lesser offense than first-degree murder, absent the defendant's consent: "Ladies and Gentlemen of the Jury ... I think you should find him guilty of manslaughter and not first degree [murder]." Id. at 177-78, 337 S.E.2d at 506. Similarly, our Supreme Court found Harbison error in State v. Matthews , 358 N.C. 102, 591 S.E.2d 535 (2004).
You have a possible verdict of guilty of first-degree murder....
You have a possible verdict of guilty of second-degree murder. And then the third possibility is not guilty....
....
When you look at the evidence ... you're going to find that he's guilty of second-degree murder[, not first-degree murder].
Id. at 106, 591 S.E.2d at 539.
In the matter before us, defense counsel failed to request an instruction on self-defense. Instead, during closing arguments, defense counsel sought to persuade the jury that defendant lacked the intent necessary for assault as she was "out of her mind" due to grief.
Thank you, Your Honor. Folks, do you remember when David Barber described [defendant] as being, "out of her mind"? ... She's described as "deranged," "irrational," and I think most importantly, "out of her mind."
....
[T]his woman is a grieving widow. And we know, from our common sense, our-our experience in life, some people, the death of a spouse changes their mind. And I'm not talking about changes their opinion; I'm talking about it rewires some people. And I would argue to you that's what we're dealing with here.
....
Ladies and gentlemen, if you believe, from the evidence that this lady was out of her mind that day, then, you have a reasonable doubt and it's your duty-it's your duty to return a verdict of not guilty.
Defense counsel's argument that the jury should find defendant not guilty because there was no intent to commit the assault, does not amount to a concession of guilt to the charge of assault on a police officer and, thus, does not amount to Harbison error. See Harbison , 315 N.C. 175, 337 S.E.2d 504. As defendant has failed to establish ineffective assistance of counsel, we deny defendant's MAR.
NO ERROR.
Report per Rule 30(e).
Judges HUNTER, Jr., and DIETZ concur.